CONTINENTAL OPTICAL COMPANY *v.* REED

[No. 17,828. Filed May 25, 1949. Rehearing denied October 14, 1949. Transfer denied January 4, 1950.]

644

On Petition for Rehearing by both parties. *Petitions denied.*

*John M. Miller, George C. Forrey III, Edward B. Raub, Jr., Jacob S. White,* and *D. P. Williams,* all of Indianapolis; *White, Wright, Raub & Forrey* (of counsel), of Indianapolis; and *Branigin & Branigin* (of counsel), of Franklin, for appellant.

*Bachelder, Bachelder & Fife,* of Indianapolis; and *Haymaker & Acher,* of Franklin, for appellee.

CRUMPACKER, J.—The appellee, an optical lens grinder by trade, brought this suit against the appellant, a manufacturer of optical lenses, to recover damages he claims to have suffered by reason of the unauthorized use of his photographic likeness for advertising purposes. Trial to a jury resulted in a verdict for the appellee in the sum of $20,000 upon which judgment was duly entered. This appeal charges that the appellant's demurrer to the complaint was erroneously overruled and its motion for a new trial improperly denied.

The complaint alleges in substance that during World War II the appellee was inducted into the United States Army and attached to a mobile optical unit which operated near the front lines in France and whose duty it was to supply and repair eyeglasses and other lenses for military use. That the appellee's work in connection with said unit was that of a lens grinder and while so engaged the War Department took his picture for the purpose of publication in the United States as a news item concerning military activities overseas and as a part of the Army's plan for bolstering home front morale. In furtherance of such policy the picture was released by the Office of War Information and appeared in one or more publications in this country and particularly in a newspaper published in the appellee's

home city of St. Paul. \ That the appellant thereupon "unlawfully and fraudulently appropriated said picture and used the same for commercial purposes in its own private enterprise without the knowledge and consent of the plaintiff and with intent to profit thereby." That in its use of said picture for advertising purposes the appellant, by innuendo, falsely represented to the general public that the appellee endorsed its product. That the appellee has a property right in his personal likeness and its use by the appellant as above indicated made its future use to him entirely worthless for advertising purposes in the optical business, to which he returned after the war. (That as a result of the appellant's unlawful and fraudulent conduct as aforesaid his "privacy has been invaded and he has been deprived of the commercial value of advertisement of his skill and ability, all to his damage in the sum of $25,000."

As to the nature of this complaint, we accept the appellee's own appraisal thereof as stated in his announcement in open court that he proposed to try the case on the theory that it is an action for damages for the violation of the appellee's right of privacy which includes the personal right to the exclusive use of his own photographic likeness for commercial purposes. In view of the appellant's demurrer to the complaint, our first concern is with the sufficiency of the facts pleaded to constitute a cause of action on such theory.

We find an exhaustive note on the doctrine of right of privacy in 138 A.L.R. 22, which covers the subject in all its phases. From it we gather that, while unknown to the common law, the preponderance of present day authority supports the view that, independent of property rights, contracts, reputation and physical integrity, there is a legal right called the right of privacy, the invasion of which gives rise to

a cause of action. As far as we have been able to learn there are but two cases in Indiana which are directly concerned with this doctrine and each commits this jurisdiction to a recognition of the right of privacy as an independent basis of a cause of action when invaded. The first of these cases is *State ex rel. Mavity* v. *Tyndall* (1946), 224 Ind. 364, 66 N. E. 2d 755, wherein the Supreme Court considered the right as substantial enough to justify equitable relief, under certain circumstances, against threatened invasion. The second is *Patton* v. *Jacobs* (1948), 118 Ind. App. 358, 78 N. E. 2d 789, in which this court recognized a violation of the right as the basis for an action at law to recover resulting damages, although denying relief upon the facts involved.

Being constrained to hold that the right of privacy is an established doctrine in this state it becomes important to define it. After a review of many decisions, the author of the note in 138 A.L.R. 22, *supra,* offers what we consider to be a comprehensive definition of an actionable invasion of the right. We quote as follows: "The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibility."

An article by Warren and Brandeis, later Justice Brandeis of the United States Supreme Court, published in 4 Harvard Law Review 193 in 1890, seems to have initiated and outlined the doctrine in theory but many years prior thereto a need was felt for the protection of persons against the unauthorized publication of their photographs, such publication

being likened to the violation "of a sort of natural copyright possessed by every person of his or her own features." 8 Am. L. Reg. (NS) 1, 8. Modern methods of advertising and publicity have accentuated such need to the extent that now, in every state that recognizes the doctrine, the unauthorized use of photographs of a person for commercial purposes, as a general rule, is held to be an invasion of his right of privacy. See *State ex rel. Mavity* v. *Tyndall, supra.*

This right, however, like any other right that resides in an individual, may be waived or lost. *Pavesich* v. *New England Life Ins. Co.* (1905), 122 Ga. 190, 50 S. E. 68, 69 L. R. A. 101; *Tanner-Brice Co.* v. *Sims* (1931), 174 Ga. 13, 161 S. E. 819. It is waived by express or implied consent and lost by a course of conduct which estops its assertion. It has been held frequently that a person who enters a business or calling which gives the public a legitimate interest in his character, activities and affairs, thereby relinquishes his right of privacy. See cases cited in 138 A.L.R. 58. Under some circumstances previous publicity may relieve a subsequent publication of the same matter of its actionable consequences. *Metter* v. *Los Angeles Examiner* (1939), 35 Cal. App. 2d 304, 95 P. 2d 491; *Melvin* v. *Reid* (1931), 112 Cal. App. 285, 297 P. 91.

It is these limitations on the right of privacy which the appellant insists make the complaint in the present case demurrable. It contends that when the appellee entered the Army, voluntarily or by draft, he became a public personage and no right of privacy enveloped his activities while in the service and the previous publication of his photograph, taken by the Army in connection with its war information policy and published in furtherance thereof, left the appellant free

to make use of the picture in its business. It is true, we think, that when the appellee entered the Army he lost his right of privacy in connection with all legitimate use of his person the military authorities saw fit to make in furtherance of the war effort. This included the right to take the appellee's picture while engaged in his army duties and publication of the same in the newspapers at home to satisfy the natural interest of the public in the activities and welfare of its soldiers abroad. To that extent only did he lose his right of privacy against the use of the picture involved in this litigation. Nor do we think that when the appellee became a member of the armed services of the United States he thereby became, *ipso facto*, a public personage in the sense that his individual likeness, activities and character became a matter of general interest and concern. The complaint describes no hero, famous personality or individual of preeminent accomplishments whose doings are items of legitimate news and general interest. Under the facts pleaded the general public could have no interest in the appellee other than as the symbol of an organization with which it was greatly concerned.

In any event a waiver of the right justifies an invasion of privacy only to the extent warranted by the circumstances which brought about the waiver. *Pavesich* v. *New England Life Ins. Co., supra.*

In the instant case the appellee had no right of privacy against the Army's use of his picture in the furtherance of its policy in building home-front morale but that situation cannot be stretched into a license to private business to use the same for advertising its wares for individual profit. In our opinion the complaint shows an invasion of the appellee's right of

privacy and pleads no facts indicating that such right has been lost or relinquished as against the appellant. The demurrer was properly overruled.

The major question remaining in the case concerns the nature of the damages and the sufficiency of the evidence to sustain the amount assessed. The appellant contends that in this type of litigation damages must be confined to compensation for the embarrassment, humiliation and mental pain a person of ordinary sensibilities would have suffered under the circumstances. With this we do not agree. The invasion of one's right of privacy is a tort and if special damages naturally flow therefrom they are recoverable and, even though not specially pleaded, proof thereof is not outside the issues. *Pavesich* v. *New England Life Ins. Co., supra; Jones* v. *Herald Post Co.* (1929), 230 Ky. 227, 18 S. W. 2d 972; *Themo* v. *New England Newspaper Pub. Co.* (1940), 306 ,Mass. 54, 27 N. E. 2d 753.

In an effort to affirm the judgment herein we have searched the record and the only evidence we find bearing on the question of damages resulting to the appellee from the unauthorized use of his pictorial likeness purely as such, is the testimony of one Don M. Julien who placed such damages at $1,000. The conclusion is inescapable that the jury, in assessing damages in the sum of $20,000, rested its verdict on the testimony of the appellee himself and that of one Harold Hastings, as no other witness in the case testified as to damages in excess of $1,000. The testimony of both the appellee and said Hastings is confined to the value of one certain photograph of the appellee, identified in the record as "Plaintiff's Exhibit 1," for use as an advertising

medium in his own business, provided it had not previously been so used by the appellant. The evidence shows, without dispute, that the negative involved belongs to the United States Army and there is nothing in the record indicating that the appellee had any right to use prints therefrom for advertising his own private business. We do not mean to say that the ownership of a negative or print is important when determining the question of whether or not one's right of privacy has been invaded by the unauthorized use of one's pictorial likeness. Even though the subject of a photograph does not own the negative or have any property rights therein, there are circumstances under which the unauthorized publication of prints therefrom would amount to an invasion of the subject's right of privacy, but when he seeks special damages based solely on the theory that another has used that particular photograph without his consent and thereby destroyed its value to him for a similar use, he must show a right to such use in himself. When a person sits voluntarily for a photograph and his picture is taken by the photographer gratuitously for his or his principal's sole use and benefit, the sitter, simply because the picture is of himself, acquires no greater property right therein than does a stranger. As bearing on this question see *Press Pub. Co.* v. *Falk* (1894), 59 Fed. 324; 41 Am. Jur., Photography and Engraving, § 3, p. 126. So far as he has not surrendered his right of privacy in connection with the use of the picture he is entitled to the protection of that right but that does not include the right to recover special damages for the destruction of a property interest which he does not have.

We are of the opinion that damages over and above $1,000 have not been proven and, to the extent that

they exceed that amount, they are excessive. In the event the appellee files a *remittitur damnum* in accordance with this holding within 30 days from the date hereof, the judgment so remitted is affirmed; otherwise this cause is remanded with instructions to sustain appellant's motion for a new trial.

Martin, J., dissents with opinion.

## DISSENTING OPINION

MARTIN, J.—In my opinion there is no question but what the appellee had the right to use prints from the picture in question in his own private business.

In my opinion there was sufficient evidence in the record to sustain the verdict and I am of the further opinion that the damages are not excessive.

NOTE.—Reported in 86 N. E. 2d 306.

## ON PETITION FOR REHEARING

CRUMPACKER, J.—The appellant and the appellee have each filed a petition for the rehearing of this appeal. Among other things the appellant complains of our failure to discuss and decide the questions raised concerning instructions given and refused. Our reasons for not doing so are now unimportant as we have concluded that the appellant is entitled to the court's opinion in reference thereto. The appellant's propositions concerning instructions fall in four classes: (1) the failure of the court to give general instructions, on its own motion, as mandated by statute; (2) error in giving certain instructions on its own motion; (3) error in refusing certain instructions tendered by the appellant; and (4) error in refusing to instruct the jury, both at the close of the plaintiff's case and

at the conclusion of all the evidence, to return a verdict for the defendant.

In reference to the first category the court gave 13 instructions on its own motion of which 4 and 5 are general instructions pertaining to burden of proof and preponderance of the evidence. No. 2 is a general instruction foreclosing the jury's right to consider pleadings as evidence of the facts alleged. No. 3 deals with those allegations of the complaint which the answer admits, thus dispensing with proof, and those which it denies, thus requiring proof. There is no other instruction on the issues, but all pleadings were sent to the juryroom for the jury's use in arriving at a verdict. While we do not commend this practice we cannot say that it does not apprise the jury of the issues they are called upon to try.

As to the other instructions given by the court on its own motion, falling in category (2) above mentioned, they are erroneous to the extent that they assume that the appellant had a property right in the particular negative involved and reprints therefrom and permit a recovery for the unauthorized use thereof. Any harm done to the appellant by these instructions is cured by the remittitur, if made, and if not made the decision grants a new trial, which is all the appellant is entitled to in any event.

As to category (3), instructions tendered by the appellant and refused by the court, we deem it sufficient to say that they are out of harmony with the principles of law which we concluded are applicable to the facts of this case and upon which our decision rests and therefore were properly refused.

We find evidence in the record to support that part of the verdict our decision affirms and there was no

error in refusing the two peremptory instructions included in category (4).

The appellee's petition urges the same reasons for a rehearing as were originally advanced in his brief in defense of the judgment. Further consideration has not altered our opinion.

Both petitions denied.

NOTE.—Petition for Rehearing reported in 88 N. E. 2d 55.