**Mrs. Lillian Marion CUNNINGHAM, Appellant,**

v.

**SECURITIES INVESTMENT CO. OF ST. LOUIS, Appellee.**

**No. 18200.**

United States Court of Appeals Fifth Circuit.

May 23, 1960.

Howard W. Lenfant, New Orleans, La., for appellant.

Floyd J. Reed, Jos. S. Kluchin, Jr., New Orleans, La., for appellee.

Before RIVES, Chief Judge, and HUTCHESON and BROWN, Circuit Judges.

HUTCHESON, Circuit Judge.

On November 11, 1958, plaintiff sued defendant alleging an invasion of her privacy. The basis of the alleged invasion of privacy was that while she was in Touro Infirmary recovering from a heart attack, defendant's agent inquired of her physician on the telephone whether or not he could speak to her about her past due automobile notes. The request was refused by plaintiff's physician, who, however, gave the message to her son, who, in turn, did nothing about it.

Plaintiff's claim was: that, when some several months later she learned of defendant's inquiry, she suffered a setback in recovery; and that the basis of this setback was that she did not want her physician to know of her financial position.

Defendant filed an answer and took depositions of plaintiff and her physicians.

On the basis of this discovery defendant filed a motion for summary judgment.[1] The motion was argued, whereupon plaintiff's counsel requested and received additional time to file rebuttal evidence and cross affidavits, but did not file any controversion. In due course the matter was submitted on the undisputed facts set out in note 1, supra, and the

---

1. Heard on the depositions of plaintiff, Mrs. Lillian M. Cunningham, of her physicians, Drs. McHardy and Leckert, a copy of a contract of compromise entered into between plaintiff and defendant on Feb. 28, 1958, and the affidavit of William L. Tupper, the following facts were established without dispute:

Plaintiff purchased an automobile on credit from the defendant and gave the defendant her note and chattel mortgage duly acknowleged before a notary public and two witnesses under date of April 9, 1956.

By June, 1957, the plaintiff was two notes in arrears in her payments and by July 3, 1957, defendant still having had no satisfaction from the plaintiff relative to what arrangements the plaintiff was going to make about paying for the automobile, defendant's agent called at the hospital in which plaintiff was being treated to inquire when and if he could talk to the plaintiff. He was advised that he could not talk to her, and at no time did any of defendant's agents attempt to see plaintiff personally in the hospital.

Plaintiff's doctor thereupon communicated to plaintiff's son that the defendant's agents wanted an arrangement about the car but the son did nothing about it, nor did he at any time communicate the information to plaintiff.

In due course the plaintiff was discharged from the hospital and went home on July 15, 1957.

Defendant, not having had any satisfaction from the plaintiff or any of her family, filed suit against the plaintiff on August 9, 1957, in the Civil District Court. Plaintiff stated that she learned about the lawsuit from a reading of the New Orleans newspapers on or about August 10, or 11, 1957.

She testified that the notice of the suit against her in the paper and the service of a supplemental petition upon her did not upset her at all, and that what upset her was Dr. McHardy's knowing about her financial condition.

Plaintiff testified that it was not until in November, 1957, that she found a written telephone message referred to above in her son's pants pocket. It is upon this fact that she bases her knowledge of the telephone communication and the consequent alleged relapse which she states forms the basis of her lawsuit.

On Feb. 28, 1958, plaintiff signed a compromise agreement (which is annexed to the Motion for Judgment) whereby she surrendered the automobile in question to the defendant and paid to the defendant $300 in addition thereto, under the supervision of Mr. Baldwin Allen, her attorney who had full knowledge of the facts as alleged.

district judge entered summary judgment[2] for defendant.

■ Here urging upon us in a single specification of error that "the court erred in deciding the case upon a motion for summary judgment without learning all the facts in the case and consequently without full knowledge of the true circumstances which give rise to the cause of action", plaintiff-appellant insists that she was "in effect deprived of her day in court". By thus standing on her pleadings, without controverting the case made by defendant in support of its motion, she is apparently of the opinion that by abstaining from controversion of defendant's showing, and, therefore, in effect refusing to participate in the proceedings for summary judgment, she could and did abort the trial on the merits by summary judgment. This is made even plainer by the further statements in the specification of error:

> "*The facts as pleaded in plaintiff's petition definitely establish a cause of action under Louisiana law as well as the general law* throughout the country. The Trial Court *erred in not giving plaintiff her day in court and an opportunity to present all of the facts upon which the action is based.*" (Emphasis supplied.)

In so urging, appellant goes contrary to Rule 56, 28 U.S.C.A., and the law of the

cases as it is settled in this circuit and generally elsewhere.

In American Insurance Co. v. Gentile Bros. Co., 5 Cir., 109 F.2d 732, 735, where the appellant, as here, did not file counter-affidavits controverting the facts set forth in the depositions and affidavits and made no effort to show that controverting facts, if any, could be presented at a later time, this court said:

> "Faced with the motion for summary judgment the appellant did not file counter-affidavits. * * * When the motion for summary judgment was heard there was no genuine issue as to any material fact and the court properly entered judgment for the plaintiff. Rule 56 Rules of Civil Procedure for the District Courts."

Moore's Federal Practice, in its accurate and thorough commentary on summary judgment procedure, as it is set out in the rules and established in the cases, shows how lacking in substance is appellant's contention that she has been unjustly deprived of a trial on the merits:

> "The summary judgment procedure prescribed in Rule 56 is a procedural device for promptly disposing of actions in which there is no genuine issue as to any material fact. *In many cases there is no genuine issue of fact, although such an issue is raised by the formal*

---

2. "It Is Ordered that the motion for summary judgment be, and the same is hereby, granted:

"Reasons

"Alleging invasion of privacy, plaintiff predicates her claim for damages on the following uncontroverted facts. While she was in the hospital recovering from a heart attack, the representative of the defendant called her doctor to request permission to interview the plaintiff with respect to the then due notes on her car. The request was denied. Several months later, by some fortuity, plaintiff learned that the defendant had made the request of her doctor. Whereupon she immediately suffered great mental anguish and aggravation of her pre-existing heart condition.

"No case in Louisiana, or elsewhere, has held that the above facts, or any similar thereto, amount to an actionable invasion of privacy. Any right which plaintiff may have had with respect to the non-disclosure of her indebtedness to the defendant must be measured against defendant's right to make reasonable efforts to have the indebtedness liquidated. The actions of the defendant's agent were reasonable. His solicitude for the sick should be commended, not condemned. If a jury brought in a verdict for the plaintiff on the above uncontroverted facts, it would be set aside as a matter of law. This case, therefore, is ripe for summary judgment."

*pleadings.* The purpose of Rule 56 is to eliminate a trial in such cases, since a trial is unnecessary and results in delay and expense which may operate to defeat in whole or in part the recovery of a just claim or the expeditious termination of an action because of a meritorious defense that is factually indisputable. 'The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial'. Richard v. Credit Suisse, 242 N.Y. 346, 152 N.E. 110 [45 A.L.R. 1041].

*"To attain this end, the rule permits a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, and admissions on file show that there are no genuine issues of material fact to be tried.* To illustrate. Where defendant submitted an affidavit on a motion to dismiss and the court gave plaintiff an opportunity to submit counter-affidavits the motion to dismiss was converted into one for summary judgment and the complaint was properly dismissed where there was no genuine issue of fact in controversy. As Judge Bone stated in Lindsey v. Leavy [ 9 Cir.] 149 F(2) 899 *the sufficiency of the allegations of a complaint do not determine the motion for summary judgment for 'if this were not the case, Rule 56 would be a nullity for it would merely duplicate the motion to dismiss'. Even though an issue may be raised formally by the pleadings, summary judgment may be granted if there is no genuine issue of material fact.* The court is authorized to examine proffered materials extraneous to the pleadings, not for the purpose of trying an issue, but to determine whether there is a genuine issue of material fact to be tried. If there is no such genuine issue, the parties are not entitled to a trial and the court, applying the law to the undisputed material facts, may render a summary judgment. * * *." Section 56.04(1) pp. 2028–2030, Vol. 6 (Emphasis supplied.)

"* * * Although the trial court in the exercise of a sound discretion may decline to grant summary judgment, even though the movant has technically discharged his burden, the trial court will normally not look with indulgence upon a party who has presented neither evidentiary materials in opposition nor any reason for his failure so to do. *Further, it is certainly well settled that the opposing party is not entitled to hold back his evidence until trial, and is not entitled to a trial on the possibility that an issue of material fact might arise if the case were to go to trial on the merits.* Nor as a general rule is an appellant entitled to overturn a summary judgment by raising an issue of fact not plainly disclosed in the trial court. And where the moving party has discharged his burden and on the record is entitled to summary judgment, the trial court's refusal to grant the opposing party a continuance or other related relief will not be interfered with by the appellate court, except where the trial court has abused its discretion. Section 56.23 pp. 2340–2341, Vol. 6 id., citing Surkin v. Charteris [5 Cir.], 197 F(2) 77." (Emphasis supplied.)

In the case of Surkin v. Charteris, cited above, at page 79, this court, in an opinion which has been universally cited with approval, where, as here the motion for summary judgment was not a motion merely on the pleadings, declared:

"The sufficiency of the complaint does not control and, although the burden is on the moving party to demonstrate clearly that there is no genuine issue if fact, the opposing

party must sufficiently disclose what the evidence will be to show that there is a genuine issue of fact to be tried."

 Of the law of Louisiana, and generally, where a right of action is recognized with respect to the right of privacy, for the claimed invasion of which plaintiff brought this suit, little need be said. The parties do not differ, indeed they are in general agreement with respect to, the statement of it. Their differences are based on, they arise entirely out of, their respective points of view regarding what is proper summary judgment procedure, and whether it has been followed in this case, that is out of the application of the law to the established facts of this case. Each recognizes Hamilton v. Lumbermen's Mutual Casualty Co., La.App., 82 So.2d 61, as a landmark in Louisiana jurisprudence with respect to the right in question. Each relies on Souder v. Pendleton Detectives, La.App., 88 So.2d 716, which approves and follows it. Neither has a serious quarrel with the American Law Institute's statement that "a person who unreasonably and seriously interferes with another's interest in not having his affairs known to others * * * is liable to the other." Restatement, "Torts", Vol. 4, Sec. 867. Each recognizes that, as the presence of malice is not necessary to the action,[3] the absence of it is not a defense to it and that generally speaking what is done rather than the precise motives which accompanied its doing is the criterion for liability. Each recognizes that oppressive treatment of a debtor, including the unreasonable giving of undue publicity to private debts, has been held to be an invasion of the debtor's right of privacy. 138 A.L.R. 92, 93. Each also agrees that a creditor has a right to take reasonable, that is non-oppressive, action to pursue his debtor and persuade payment, although the steps taken may result in actual but not actionable invasion of the debtor's privacy. Each recognizes that in the notes to the Sidis case, Sidis v.

F-R Pub. Corp., 2 Cir., 113 F.2d 806, 138 A.L.R. 91, and in the supplemental annotations in 168 A.L.R. and in Continental Optical Co. v. Reed, 119 Ind.App. 643, 86 N.E.2d 306, 88 N.E.2d 55, 14 A.L.R.2d 743, many such situations are dealt with and discussed. Cf. 41 Am.Jur. "Privacy", 925 et seq., particularly Section 30, page 947.

 In the light of these and other authorities which may be cited, we find ourselves in full agreement with the statement made by the district judge in granting the summary judgment, "No case in Louisiana or elsewhere has held that the above facts or any similar thereto amount to an actionable invasion of privacy", and with his action in granting it.

The judgment is affirmed.

---

3. Cason v. Baskin, 155 Fla. 198, 20 So.2d 243, 168 A.L.R. 430, and note 446 et seq.