Walter **VALENTINE**

v.

The **SOUTH COAST CORPORATION** and **Southern Pacific Company.**

**Civ. A. No. 12726, Division "C".**

United States District Court
E. D. Louisiana,
New Orleans Division.

June 7, 1963.

Jack C. Benjamin, New Orleans, La., for plaintiff.

Harry McCall, Jr., New Orleans, La., for defendant.

WEST, District Judge.

Petitioner, Walter Valentine, was injured while in the process of loading bagasse aboard a gondola railroad car. During the course of the loading operations, a sudden movement of the car caused the plaintiff to fall from the car, causing injuries which resulted in the amputation of his right leg. He brings this action for damages against respondents, South Coast Corporation and Southern Pacific Company, pursuant to the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60, and the Safety Appliance Acts, 45 U.S.C.A. §§ 1–23.

Respondent, Southern Pacific Company, filed a motion for Summary Judgment on the grounds that there is no material issue of fact involved which could justify a judgment against it and in favor of the plaintiff. A careful review of the record in this case leads to the conclusion that the motion for Summary Judgment in favor of respondent, Southern Pacific Company, should be granted.

According to the allegations of the complaint filed by the plaintiff, he was working on a gondola car which was owned and furnished by Southern Pacific Company, when he was injured "due to unsafe locomotive and railroad cars, and their defective equipment". He alleges that he was thrown from the car when it became uncoupled, but there are no specific acts of negligence alleged. Following the filing of the complaint, the plaintiff propounded numerous interrogatories to both respondents, South Coast Corporation and Southern Pacific Company, and both respondents, in turn, propounded interrogatories to the plaintiff. These interrogatories and the answers thereto are a part of the record, and, of course, must be considered along with the pleadings when considering respondent's motion for Summary Judgment.

The answers given under oath by the plaintiff to the interrogatories propounded to him show that he was employed by South Coast Corporation, and that this company paid his wages and controlled and supervised his work. While he did, in the course of his employment with South Coast Corporation, load bagasse on gondola cars owned by Southern Pacific Company, still the Southern Pacific Company did not, as far as he knew, in any way supervise or control his work. He was unable to specify any acts of negligence whatsoever on the part of Southern Pacific Company, and he knew of no violations by Southern Pacific Company of any of the provisions of the Safety Appliance Acts. In other words, in spite of the allegations of his complaint, according to his own testimony, given under oath by answers to written interrogatories, he was employed, supervised and controlled entirely by South Coast Corporation, and all he knew about this accident was that the gondola car on which he was riding either was not coupled to or became uncoupled from the "donkey engine", and that as a result of a sudden movement of the gondola car, he was thrown off and injured.

The sworn answers of Southern Pacific Company to the interrogatories propounded to it by the plaintiff establish that the plaintiff was not in its employ

**150**

and that Southern Pacific Company knew absolutely nothing of the accident in question. It owned the gondola car in question, but it had turned complete control of it over to South Coast Corporation, who was to load it with bagasse and place it back on Southern Pacific's main siding to be picked up and ultimately moved by Southern Pacific Company to a place designated by South Coast Corporation. Southern Pacific Company did not own, control or supervise the "donkey engine" being used to move the car at the time of the accident. Southern Pacific had no written contract with South Coast Corporation, but was obligated only insofar as the applicable tariff made it obligated. Under the applicable tariff, Southern Pacific had only to furnish the gondola car to South Coast Corporation, and then pick it up after it had been loaded with bagasse by South Coast Corporation. Southern Pacific had no right or duty to supervise or control the loading of the gondola car, nor did it have any right or duty to supervise or control the movement of the gondola car until after it was loaded by South Coast Corporation and made ready for ultimate pick up and movement by Southern Pacific to its ultimate destination.

The answers of South Coast Corporation to the interrogatories propounded by the plaintiff established also that the plaintiff was in its employ as a laborer. The "donkey engine" was owned by the Celotex Company, but was operated and controlled exclusively by South Coast Corporation. There was no written contract of any kind between South Coast Corporation and Southern Pacific aside from the applicable tariff, which only required Southern Pacific to provide the gondola car for loading with bagasse by South Coast Corporation at Colley Switch, and then, after it was loaded, to pick it up on the main spur and transport it to the Celotex Company. While the spur track on which the accident occurred was owned by Southern Pacific, the accident occurred on the property of South Coast Corporation. As a result of the accident, South Coast Corpora-

tion paid to the plaintiff the total sum of $10,514.58 in workman's compensation, plus the sum of $2,859.40 medical payments pursuant to the provisions of the Louisiana Workmen's Compensation Laws.

Plaintiff filed of record his affidavit, together with a copy of a freight tariff, No. 15–E. Neither of these documents add anything to the facts clearly established by the answers to the interrogatories alluded to above.

■ In order for plaintiff to recover damages from Southern Pacific Company for his injuries under the Federal Employers' Liability Act, he must have been an employee, either directly or constructively, of Southern Pacific Company at the time of the accident. 45 U.S.C.A. § 51; Kelly v. Delaware River Joint Commission, D.C., 85 F.Supp. 15; Chicago, R. I. & P. R. Co. v. Bond, 240 U.S. 449, 36 S.Ct. 403, 60 L.Ed. 735. While it is true that the question of whether or not one is an employee under the Federal Employers' Liability Act is one of fact to be determined and decided upon the facts of each particular case, Baker v. Texas & Pacific Railway Co., 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed. 2d 756, nevertheless, if it appears that reasonable men could not reach differing conclusions on that issue, the question should not be submitted to the jury. Summary judgment should only be granted in cases where it conclusively appears from the record, including affidavits and other supporting evidence, that there is no genuine issue as to material fact. Cunningham v. Securities Investment Co. of St. Louis, 5 Cir., 278 F.2d 600. The function of a motion for Summary Judgment is not to permit the Court to decide issues of fact, but only to determine whether or not there actually are issues of fact to be tried. Cunningham v. Securities Investment Co. of St. Louis, supra; Aetna Insurance Company v. Cooper Wells & Company, 6 Cir., 234 F.2d 342.

■ In this case there is simply no disputed facts whatsoever concerning

plaintiff's employment status. He was an employee of South Coast Corporation. He simply was not an employee in any sense whatsoever of Southern Pacific Company.

In the various cases cited by the plaintiff, the facts of each case show that the railroad company involved had contracted out the loading operation, and had, in fact, retained either control, or the right to control the loading operations. For example, in the case of Mazzucola v. Pennsylvania Railroad Company, 3 Cir., 281 F.2d 267, the Court held that the question of employment status should be determined by the jury. However, in that case, it is significant to note that the Pennsylvania Railroad Company itself had the obligation to load the cars in question pursuant to a contract with the New York Port Authority. The Railroad then in turn subcontracted the unloading work to McGrath Stevedoring Corporation. Under the terms of this contract, the Railroad Company reserved the right to perform the loading or unloading operations itself, with its own labor force, and also reserved the right to terminate the loading and unloading contract on ten days' notice. It was further provided that the loading and unloading contract could not be assigned without the Railroad's consent. Surely, in that case, there was sufficient evidence of the retention of control and supervision by the Railroad to create a disputable issue as to the question of employment status. In the case of Cimorelli v. New York Cent. R. Co., 6 Cir., 148 F. 2d 575, the Railroad had contracted with the United States Government to transport and store certain war materials in transit. The Railroad was obligated under the contract to unload the cars and to place the materials in designated storage areas, and the Railroad was to be paid for the loading and unloading operations in addition to the transportation charges. The Railroad then contracted with the Duffy Construction Company for the unloading and reloading of the cars. It was specifically provided that the Duffy Construction Company was to perform the work as an independent contractor with exclusive supervision over the manner and method of its performance, with the Railroad retaining only the right to control the work insofar as the finished job was concerned. However, in this case, the subcontract of loading and unloading was definitely a part of the work originally undertaken and the obligations specifically assumed by the Railroad pursuant to its contract with the United States Government. Insofar as the Government was concerned, it was the Railroad, and not the Duffy Construction Company, who had the obligation to properly load and unload the railroad cars. Such is not the case in the present case. Here, the respondent, Southern Pacific Company, had no obligation whatsoever in connection with the loading of the gondola car on which the complainant was injured. A situation similar to that found in the Cimorelli case existed in Pennsylvania R. Co. v. Roth, 6 Cir., 163 F.2d 161. Here again the Railroad had agreed with the Government to provide storage yards on its line and to load and unload and transport materials by rail. The Railroad Company then contracted with Fritz-Rumer-Cook Company for the unloading of inbound cars. The switching of the cars for loading and unloading was actually done by the Railroad's switch engine, even though the operation of the switch engine was supervised by a foreman of the Fritz-Rumer-Cook Company. In that case the Court held that the ruling in the Cimorelli case was controlling in that the work being performed was part of the over-all work of the Railroad and that the Railroad did retain sufficient control over the operation to make the entire operation a part of its regular business. The Court held that construing the contract as a whole, it was never the purpose or intention of the parties that the work of loading and unloading should be performed by the construction company as an independent contractor. To the same effect is the case of Pennsylvania R. Co. v. Barlion, 6 Cir., 172 F.2d 710. Another case cited by the plaintiff

is the case of Sinkler v. Missouri Pacific Railroad Company, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799. That case dealt with a matter of contractual obligation between the Railroad and the Houston Belt & Terminal Railway Company, which company had, by contract, undertaken to switch cars for the Missouri Pacific Railroad Company from one track to another in the Union Station at Houston, Texas. It involved a situation entirely unlike the facts of the present case and is simply not pertinent to the matter now under consideration.

The plaintiff in his brief quotes from Ward v. Atlantic Coast Line R. Co., 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820, as follows:

"If you find that the railroad, * * had the power to direct, control and supervise the plaintiff in the performance of the work he was doing at the time he was injured, then you should find that the plaintiff was employed by the defendant railroad at the time he was injured."

That is undoubtedly a sound jury charge under the proper circumstances, but the record in this case contains no dispute whatsoever in this regard. When this matter first came on for hearing, the Court granted the plaintiff additional time within which to produce proof by way of depositions, affidavits, or other evidence to show that there was at least a disputed issue of fact concerning the question of employment, control or supervision. No such proof was offered. Furthermore, after the plaintiff was injured he entered into a workman's compensation settlement with South Coast Corporation wherein he declared under oath that he was an employee of that company and thereby entitled to compensation benefits. He admitted his employment by South Coast then and he frankly admits it now. There is simply no disputable issue raised in this record as to any employment of the plaintiff by Southern Pacific Company, nor is there any disputable issue raised as to any violation by the respondent, Southern Pacific Company of the provisions of the Safety Appliance Acts. The answers to the interrogatories specifically negate any such claims. For these reasons, the motion of Southern Pacific Company for Summary Judgment will be granted.