Dan R. CULLISON, Plaintiff–Appellant,

v.

Ernest W. MEDLEY, Doris Medley, Ron Medley, Sandy Medley, and Terry Simmons, Defendants–Appellees.

No. 84A01–8912–CV–524.

Court of Appeals of Indiana, First District.

Sept. 18, 1990.

Rudolph Wm. Savich, Bloomington, for plaintiff-appellant.

Robert C. Price, Price and Runnells, Bloomington, for defendants-appellees.

BAKER, Judge.

Plaintiff-appellant Dan Cullison .(Cullison) appeals the trial court's grant of summary judgment in favor of the defendant-appellees Ernest, Doris, Ron, and Sandy Medley and Terry Simmons (collectively, "the Medleys"). We affirm.

### ISSUE

Whether the impact rule prohibits Cullison from recovering for his claimed emotional distress resulting from the Medleys' alleged wrongdoings.

### FACTS

The facts of this case are largely undisputed. On February 2, 1986 thirty-four year old Cullison encountered Sandy, the sixteen year old daughter of Ernest, in a shopping center parking lot. Cullison had a brief conversation with her during which he told her she had pretty lips and invited her to have a coke with him. When Sandy told Cullison she did not think her father

would approve, Cullison invited Sandy to stop by his home if she wanted to. He then left.

Approximately two hours later, Sandy and her family (father, mother, brother, and brother-in-law) went to Cullison's home. Sandy's father knew Cullison because Cullison previously performed some work for him. Sandy's brother-in-law knew Cullison because they were neighbors. Prior to the Medleys' visit to Cullison's home, contact between the parties was pleasant and amiable. On this evening, Sandy approached Cullison's home, knocked on the door and stated she wanted to talk to him. Cullison said: "[O]kay, but I'll have to get dressed." *Record* at 22. Cullison did not know who was at the door and was "pretty sure" the door closed after he told the person who knocked he had to get dressed. *Record* at 210. He went to the back of his home and the Medleys entered the front door, remaining in the living room in the front of the trailer until Cullison returned. Soon, an argument ensued concerning the suggestive comments Cullison made to Sandy earlier in the evening.

Ernest, on crutches due to knee surgery, shifted back and forth causing the display of a gun strapped to his side. He never removed the gun, never touched the gun, and never mentioned the gun. Ernest turned to the side and shook the gun on his hip at Cullison. Doris said some things that "weren't very nice" although Cullison does not know what she was saying. *Record* at 223. Sandy was yelling at Cullison, calling him a "pervert" and telling him he was "sick." *Record* at 290. Ron and Terry said nothing to Cullison. Ernest told Cullison he would "jump astraddle" of him if he did not leave his sixteen year old daughter alone. *Record* at 291. The Medleys then left, although Terry remained behind for a few moments at Cullison's request because Cullison "wanted to know what was going on." *Record* at 282.

Approximately two months later, Cullison saw Ernest at a Hardees restaurant. Ernest again had a gun strapped to his side, and was meeting some men to trade guns. Ernest said nothing to Cullison, although Ernest glared at him in a menacing manner. On another occasion, Sandy and her mother walked in front of Cullison's house on the sidewalk two times.

As a result of these contacts, Cullison claimed to have suffered injury requiring psychological counseling and therapy. He took medication which prevented him from operating power tools or driving. He suffered from nervousness, depression, sleeplessness, and impotency. He brought an action against the Medleys for trespass, assault, and harassment to recover damages for his emotional distress, loss of business profits, and impotency. Upon the Medleys' motion, summary judgment was granted in their favor.

## DISCUSSION AND DECISION

In reviewing an entry of summary judgment, this court applies the same standard as the trial court. Summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All evidence is construed in favor of the non-movant. *Hatton v. Fraternal Order of Eagles* (1990), Ind.App., 551 N.E.2d 479.

It is uncontroverted that Cullison sustained no physical injury from any of the contacts with the Medleys. He seeks to recover damages for emotional problems he developed as a result of the Medleys' actions.

The general rule in Indiana, known as the impact rule, is that damages for mental anguish are recoverable only when accompanied by and resulting from a physical injury. *Charlie Stuart Oldsmobile, Inc. v. Smith* (1976), 171 Ind.App. 315, 357 N.E.2d 247, *modified on other grounds*, 175 Ind.App. 1, 369 N.E.2d 947. The rationale behind this rule is that absent physical injury, mental anguish is speculative, subject to exaggeration, likely to lead to fictitious claims, and often so unforeseeable that there is no rational basis for awarding damages. *Id.*

This rule is subject to an exception. Compensatory damages for mental anguish unaccompanied by physical injury may be awarded in certain tort actions. These tort actions must involve "the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance." *Id.* 357 N.E.2d at 254. The conduct of defendants in such circumstances is characterized as being willful, callous, or malicious. *Id.*

> When a tort involves the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance, or when the conduct causing the injury was inspired by fraud, malice, or like motives and the conduct was intentional, such emotional or mental anguish supports an award of compensatory damages.

*Arlington State Bank v. Colvin* (1989), Ind.App., 545 N.E.2d 572, 576–77, *trans. denied* (citations omitted). Federal courts have interpreted this exception as having three requirements: (1) there is an invasion of a legal right of the plaintiff; (2) which is likely to provoke an emotional disturbance or trauma; and (3) the defendant's conduct is willful, callous, or malicious. *Moffett v. Gene B. Glick Co., Inc.* (N.D.Ind.1985), 621 F.Supp. 244, 285, *overruled on other grounds, Reeder–Baker v. Lincoln Nat. Corp.* (N.D.Ind.1986), 644 F.Supp. 983. Cullison attempts to bring himself within the exception to the impact rule by alleging three torts were committed: trespass, assault, and invasion of privacy.

### Trespass

Cullison contends a trespass took place when the Medleys entered his trailer after he went in back to dress. In an action based upon trespass, the plaintiff must prove that he was in possession of the land and the defendant entered the land without right. *Sigsbee v. Swathwood* (1981), Ind.App., 419 N.E.2d 789. Upon proof of these elements, the plaintiff is entitled to nominal damages without proof of injury. *Id.* While it may be possible under Cullison's version of the facts of this case for him to prove a trespass and receive nominal damages, that is not the relief Cullison is requesting. In addition to proving the elements of trespass, to fit within the exception to the impact rule Cullison must show this tort is likely to provoke an emotional disturbance and the defendants' conduct was willful, callous, or malicious. *Moffett, supra.*

In a case in which a trespass was found to have occurred, this court articulated the general impact rule and held because the plaintiffs showed no physical injury caused by the defendants, they could not recover damages for grief they suffered. *Indiana Motorcycle Ass'n v. Hudson* (1980), Ind. App., 399 N.E.2d 775. In *Hudson*, trespassing motorcyclists made trails on the plaintiff's land, tore down fences, placed paint and signs on plaintiff's trees, and destroyed other trees. The exception to the impact rule was not applied to the tort of trespass. *Id.* In this case, there is no allegation of such egregious physical damage caused by the Medleys' trespass, and Cullison's attempt to bring this trespass under the exception to the impact rule fails.

While the question of whether an invasion of a legal right is likely to cause an emotional disturbance may be an issue for the trier of fact, *see Baker v. American States Ins. Co.* (1982), Ind.App., 428 N.E.2d 1342, Cullison must show the Medleys' conduct was willful, callous, or malicious to overcome the impact rule. Under even the most favorable version of his own facts, Cullison has not met this requirement. Cullison admits he spoke with Sandy earlier in the evening, told her she had pretty lips, invited her to have a coke with him, and invited her to come to his trailer. Later that evening, Sandy and her family came to the trailer to discuss these comments with Cullison. The family's actions in defending their daughter cannot be said to be malicious, callous, or willful. It is the parents' duty to protect their children. The Medleys perhaps did not choose the most appropriate time and manner to speak to Cullison about these remarks; but their actions cannot be characterized in the light necessary to bring Cullison within the exception to the impact rule. The Medleys simply went to Cullison's home to discuss

suggestive remarks Cullison admitted he made to sixteen year old Sandy. Cullison has not shown any facts which would bring him under the exception to the impact rule.

Even if we were to find the Medleys' actions constituted a trespass falling within the exception to the impact rule, we would still find summary judgment was appropriately granted in this case. Proximate cause is a necessary element in any tort case, *Revord v. Russell* (1980), Ind. App., 401 N.E.2d 763, and the key to determining proximate cause is reasonable foreseeability. *FMC Corp. v. Brown* (1988), Ind.App., 526 N.E.2d 719, *aff'd*, by 551 N.E.2d 444. While this question is generally a question of fact, it becomes a question of law when the facts are not in conflict and only one inference can be drawn from the facts. *Id.* In this case, viewing the largely undisputed facts in a light most favorable to Cullison, we find the injuries of which Cullison complains were not reasonably foreseeable from the Medleys' actions. The Medleys simply went to Cullison to advise him to stay away from Sandy. It was not reasonably foreseeable that Cullison would become emotionally distraught and impotent as a result of the Medleys' actions. The trial court did not err in granting summary judgment for the Medleys.

### Assault

Cullison contends on appeal an assault took place in his trailer when Ernest (on crutches) made repeated motions with his hand as if to draw the gun. An assault may be defined as an intentional unlawful offer of bodily injury to another under such circumstances as create a well founded fear of imminent peril with the apparent present ability to effectuate the attempt. 3 I.L.E. *Assault and Battery* Section 2 (1978).

Cullison's complaint alleged Ernest brandished a firearm in Cullison's presence with the intent to place Cullison in imminent fear of bodily injury. As noted above, we are to construe pleadings liberally in favor of the non-moving party on a motion for summary judgment. The allegations in the complaint cannot be taken as true, however, if they are negated by the plaintiff in sworn admissions such as deposition testimony. *Little v. Williamson* (1982), Ind. App., 441 N.E.2d 974, 975, n. 3. Cullison stated at two depositions and at the hearing on the summary judgment motion that the gun was never removed from its holster in Cullison's presence. Ernest never touched the gun and never mentioned the gun. Cullison, testifying at an earlier hearing about the incident at the trailer answered: "That's right," to the question: "The only thing really after all your testimony here, the only thing really that it all boils down to, isn't it, is he said he was going to 'jump astraddle' of you?" *Record* at 37. Ernest told Cullison he would "jump astraddle" of him if Cullison ever talked to his daughter again. *Record* at 223. This conditional language did not express any present intent to harm Cullison and was thus not an assault. *See* 6A C.J.S. *Assault and Battery*, Section 4 (1975).

As discussed above, even if we were to find an assault had occurred, we would find the summary judgment appropriately granted because Cullison made no showing the Medleys' actions were malicious, callous, or willful, or that the alleged injuries he suffered were a foreseeable result of the Medleys' conduct.

### Invasion of privacy

Cullison argues his privacy was initially invaded when the Medleys came to his home on February 2, 1986, and it was continually invaded when Ernest came to Hardees with a gun strapped to his hip and when Sandy and her mother walked on the sidewalk in front of Cullison's trailer.

In his complaint, Cullison states as Count 3: "Ernest W. Medley has continually brandished firearms in the presence of Plaintiff with the intent to harrass (sic), embarrass, threaten, and humiliate Plaintiff in public places on several occassions (sic)." *Record* at 10. This does not state a

cause of action for invasion of privacy.[1] In addition, Cullison's memorandum of law in opposition to the Medleys' motion for summary judgment does not mention the tort of invasion of privacy and only briefly mentions harassment. *Record* at 159–188. Because the issue was not presented in the motion for summary judgment, Cullison cannot now raise it on appeal. *City of Lake Station, et al. v. State Ex Rel. Moore Real Estate, et al.* (1990), Ind., 558 N.E.2d 824; *Apple v. Kile* (1983), Ind.App., 457 N.E.2d 254 (appellant who has presented his case to the trial court on a certain and definite theory is not permitted to change theory on appeal).

Even if we were to assume this theory was presented at trial, Cullison has not presented evidence to withstand a motion for summary judgment. He stated Ernest was in Hardees at the same time as Cullison and that Ernest was wearing a gun and glared at Cullison. Further, Ernest stood near the place Cullison was seated and the gun "wiggled." *Record* at 329. These facts, accepted as true for the purpose of summary judgment, do not rise to the level of outrageous, wrongful intrusion into one's private activities. The trial court did not err in granting summary judgment in favor of the Medleys.[2]

Judgment affirmed.

RATLIFF, C.J., concurs.

SULLIVAN, J., concurs in result.

---

1. The tort of invasion of privacy has been defined as follows: "The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibility." *Continental Optical Co. v. Reed* (1949), 119 Ind.App. 643, 648, 86 N.E.2d 306, 308.

2. Cullison urges us to recognize the tort of intentional infliction of emotional distress as an independent cause of action; we decline to do so, as this is a task better suited for our legislature. Even if we were inclined to recognize a new cause of action for intentional infliction of emotional distress, the facts of this case would not establish the proper vehicle for so doing.