Michael POHLE, Appellant–Defendant,

v.

Doris CHEATHAM, Appellee–Plaintiff.

No. 40A05–9908–CV–353.

Court of Appeals of Indiana.

Feb. 29, 2000.

Mark J. Dove, Rogers & Dove, North Vernon, Indiana, Attorney for Appellant.

Thomas J. Lantz, Montgomery, Elsner & Pardieck, Seymour, Indiana, Attorney for Appellee.

## OPINION

BAKER, Judge

Appellant-defendant Michael Pohle brings this interlocutory appeal of the trial court's grant of appellee-plaintiff Doris Cheatham's motion for partial summary judgment, regarding Pohle's affirmative defense of waiver. Specifically, Pohle argues that waiver is a question of fact for the jury to determine and, therefore, cannot be resolved by summary judgment. Further, Pohle contends that the trial

court impermissibly weighed the evidence designated by the parties.

### FACTS

The facts most favorable to Pohle reveal that on October 13, 1977, Pohle and Cheatham were married. A daughter, K.P., was born to the marriage on September 12, 1979. In May 1993, the couple became estranged. However, sometime in late September or early October 1993, during this estrangement, Cheatham and Pohle engaged in sexual relations at Pohle's home. During this visit, in which Cheatham had hopes of reconciliation, she voluntarily posed for Pohle to take Polaroid photographs of her both clothed, in a state of nudity and performing a sex act. At no time during or after these pictures were taken did Cheatham ask what Pohle intended to do with the pictures or attempt to recover them.

Thereafter, on December 29, 1994, the parties' marriage was dissolved. According to a catchall provision in the court-approved property settlement, each party was awarded any miscellaneous personal property in their respective possession. Thus, as the pictures remained in Pohle's possession, they were tacitly awarded to him in the dissolution decree.

Apparently, at some point after the dissolution, Pohle sent the following handwritten letter to Cheatham:

Doris

I think it is time for you to move out of Jennings Co. I told [K.P.] I was going to ask you to.

You and [K.P.] think [K.P.] is to [sic] good to be around me and my family. I think it is time [K.P.] moved away from the Applegate's and Claire's.

You have tought [sic] [K.P.] to hate me and she will soon hate you. What will Rodger's parents think of your pictures. [sic]

A lot of your friends and family and other people will soon see a lot more of you then [sic] you would like them to.

See you in Hell

Your X

Record at 47. Cheatham did not respond to this letter that she allegedly received or take any action to obtain the photographs from Pohle.

On February 28 or March 1, 1998, Pohle made photocopies of the nude pictures taken years earlier. Each photocopy included several photos of Doris in various sexually explicit poses. Pohle also included on these photocopies handwritten notations such as the following:

*Bitch* of year "97"

Doris ~~Pohle~~ Cheatham

*Husband*—Bob

*Attorney*

Margarett Pardieck

*Work* – Sylvania – Seymour

812–346–XXXX.

R. at 26–30, 45 (emphasis in original) (numbers deleted herein). After placing the individual photocopies in plastic baggies to protect them from the weather, he then posted and scattered them around several locations throughout Jennings County, including businesses in North Vernon such as Wal-Mart, Jay C Store, Crystal Flash, and Cabin Restaurant. R. at 24–25. Moreover, Pohle dispersed several dozen of the photocopies throughout Cheatham's neighborhood and her church. R. at 25. After being alerted by a neighbor who found one of the photocopies, Cheatham and the neighbor canvassed the neighborhood to retrieve the pictures. Cheatham, with help from friends and family, then attempted to recover the photos in other locations. In all, approximately sixty photocopies were retrieved from various locations around town. R. at 80. However, Cheatham still received several calls from individuals who encountered pictures that were not recovered.

As a result of the publication of these photographs, Cheatham filed a complaint against Pohle on March 27, 1998, alleging intentional invasion of privacy and inten-

tional infliction of severe emotional distress. In his amended answer, Pohle raised the defense of waiver. On March 31, 1999, Cheatham filed a motion for partial summary judgment, arguing that, as a matter of law, waiver was not a viable affirmative defense in the instant case. Following a hearing, the trial court granted Cheatham's motion for partial summary judgment on June 9, 1999. Pohle now appeals.[1]

## DISCUSSION AND DECISION

### I. Standard of Review

 The purpose of summary judgment is to terminate litigation of issues for which there can be no factual dispute and which can be determined as a matter of law. *Ad Craft, Inc. v. Area Plan Comm'n of Evansville and Vanderburgh County,* 716 N.E.2d 6, 16 (Ind.Ct.App.1999). Thus, summary judgment is only appropriate where the designated materials reveal that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Ind. Trial Rule 56(C); *Carie v. PSI Energy, Inc.,* 715 N.E.2d 853, 855 (Ind.1999). On appeal from a grant of summary judgment, we stand in the shoes of the trial court. *Ad Craft,* 716 N.E.2d at 16. We do not weigh the designated evidence, but, rather, we view such evidence in the light most favorable to the non-moving party. *Id.* However, where the facts are not in dispute, summary judgment is inappropriate only when the fact finder may reasonably draw conflicting inferences from the undisputed facts. *Kaghann's Korner, Inc. v. Brown & Sons Fuel Co., Inc.,* 706 N.E.2d 556, 565 (Ind.Ct.App.1999), *clarified on reh'g on other grounds,* 711 N.E.2d 1286 (1999). Further, we may sustain a grant of summary judgment upon any theory supported

by the designated materials and are not bound by the trial court's findings. *Ad Craft,* 716 N.E.2d at 16. We note that the nonmovant has the burden of demonstrating on appeal that the grant of summary judgment was erroneous. *Carie,* 715 N.E.2d at 855.

 Moreover, while the existence of facts necessary to constitute waiver is ordinarily a question of fact, the question of what facts are necessary to constitute waiver is a matter of law. *Jackson v. DeFabis,* 553 N.E.2d 1212, 1217 (Ind.Ct. App.1990). When only the inferences and legal conclusions to be drawn from the facts are argued, the question of waiver is proper for the court to consider as a matter of law on summary judgment. *See id.* Finally, when the material designated by the parties is conclusive, summary judgment may be appropriate even if the dispositive issue turns on intent. *Maul v. Van Keppel,* 714 N.E.2d 707, 709 (Ind.Ct. App.1999).

### II. Defense of Waiver

Pohle argues that the trial court erred in granting partial summary judgment on his defense of waiver. Specifically, he contends that there exists a genuine issue of material fact regarding whether Cheatham impliedly waived her right to complain about his publication of the photographs.[2] He asserts that waiver is ordinarily a question of fact. Further, Pohle points to the following facts that he alleges give rise to the inference of waiver:

1. [Cheatham] voluntarily posed for nude photographs taken by [Pohle] at his home during a time that the two of them were separated.

2. [Cheatham] voluntarily posed for the photographs without asking [Pohle] what he intended to do with them.

---

1. On July 14, 1999, pursuant to a petition filed by Pohle, the trial court certified its order for interlocutory appeal and stayed all proceedings pending final disposition of the appeal. We similarly granted Pohle's petition and accepted jurisdiction of the appeal on

August 23, 1999, pursuant to Ind. Appellate Rule 4(B)(6).

2. We note that Pohle does not assert that Cheatham expressly waived her rights.

3. [Cheatham] did not take any action to obtain the photographs during the divorce action between she and [Pohle] and allowed them to be awarded to [Pohle] therein.

4. [Cheatham] did not take any action to obtain the photographs when she learned that [Pohle] intended to publish them nor did she take any action to restrain his actions in doing so.

Appellant's Brief at 7. Finally, Pohle asserts that the trial court impermissibly weighed the evidence.

■■■ Waiver is an intentional relinquishment of a known right, requiring both knowledge of the existence of the right and intention to relinquish it. *Matter of S.L.*, 599 N.E.2d 227, 229 (Ind.Ct. App.1992). Moreover, waiver may be shown either by express or implied consent, and, thus, the right may be lost by a course of conduct which estops its assertion. *See Continental Optical Co. v. Reed*, 119 Ind.App. 643, 649, 86 N.E.2d 306, 309 (1949). However, waiver is an affirmative act and mere silence, acquiescence or inactivity does not constitute waiver unless there was a duty to speak or act. *See American Nat'l Bank & Trust Co. v. St. Joseph Valley Bank*, 180 Ind.App. 546, 554, 391 N.E.2d 685, 687 (1979). Further, any waiver of an individual's right to privacy justifies an invasion only to the extent warranted by the circumstances which brought about the waiver. *Continental Optical*, 119 Ind.App. at 650, 86 N.E.2d at 309.

■■■ Before analyzing the waiver issue, it is important to consider the causes of action Cheatham is alleged to have waived. Cheatham's first claim is based on the public disclosure of private facts theory of invasion of privacy. Such a claim for invasion of privacy requires proof of the following essential elements: (1) private information was publicly divulged; (2) to persons who had no legitimate interest in the information; (3) in a manner that was coercive and oppressive; and, (4) such information would be highly offensive and objectionable to a reasonable person of ordinary sensibilities. *Watters v. Dinn*, 666 N.E.2d 433, 437 (Ind.Ct.App.1996). Cheatham's second claim alleges intentional infliction of emotional distress, which applies when one by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another. *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind.1991). We note that it is the intent to harm someone emotionally that constitutes the basis for this tort. *Id.*

■■■ It is apparent that Cheatham's causes of action are premised not upon Pohle's taking or possession of the photographs, but upon his distribution of them to the public. Thus, the critical inquiry is whether, as a matter of law, Cheatham has not impliedly waived her right to complain about the public distribution of the photographs.

We find that Pohle's reliance on *Indiana Nat'l Bank v. Chapman*, 482 N.E.2d 474 (Ind.Ct.App.1985), *trans. denied*, is misplaced. While *Indiana Nat'l Bank* did address an invasion of privacy claim, our resolution of the case turned on the legitimate public concern element of invasion of privacy, with no discussion of waiver. *Id.* at 477–79, 484. Specifically, we held that the bank's answers, regarding the status of Chapman's automobile loan, to a police officer conducting an arson investigation of Chapman, were in response to a legitimate law enforcement inquiry and thus a matter of legitimate public concern. In the instant appeal, Pohle does not claim, nor do we believe he seriously could claim, that the photographs he distributed of Cheatham were of legitimate public concern.

Rather, Pohle relies on our subsequent discussion, arguably *obiter dictum*, in *Indiana Nat'l Bank*, which began as follows:

Our decision that legitimate inquiry into Bank records by law enforcement officials does not give rise to a private right of action for invasion of privacy is buttressed by cases that have addressed

such inquiry in connection with fourth amendment claims.

*Id.* at 478. In *Indiana Nat'l Bank,* we proceeded to discuss numerous fourth amendment cases where no expectation of privacy was found to exist in business records that were handed over to police by a third party. *See U.S. v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) (holding that checks and deposit slips were business records of bank, voluntarily conveyed to the bank and exposed to its employees in the ordinary course of business, and therefore, defendant had no legitimate fourth amendment expectation of privacy in such documents); *Leonard v. State,* 249 Ind. 361, 232 N.E.2d 882 (1968) (finding that if a bank has lawful possession of bank records, defendant cannot claim an illegal search and seizure by police because fourth amendment rights are personal rights); *Cox v. State,* 181 Ind.App. 476, 392 N.E.2d 496 (1979) (holding that check and deposit slip obtained from bank without a search warrant were admissible, as there is no legitimate expectation of privacy in such records and consequently no fourth amendment protection).

Finally, in *Indiana Nat'l Bank,* we discussed and quoted extensively from *In re Order for Indiana Bell Tel. to Disclose Records,* 274 Ind. 131, 409 N.E.2d 1089 (1980). In that case, our supreme court upheld an order requiring Indiana Bell to turn over to the prosecutor long distance telephone records of two customers who were the parents of escapees who had made collect calls to them. Specifically, the court noted that telephone customers are fully aware that records will be made of their toll calls, that the records are company property and that the government has ready access to the records for law enforcement purposes. Thus, after further observing that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties, the court determined that the expectation of privacy protected by the Fourth Amendment attaches to the content of the telephone conversation and not to the fact that a conversation took place.

*Id.* at 1090. Pohle seizes on the following passage from *Indiana Bell* which was quoted in *Indiana Nat'l Bank* :

"[C]ourts have uniformly held that subscribers have no *Fourth Amendment* basis for challenging Government inspection of their toll records, since subscribers, like bank depositors, have taken the risk in revealing their affairs to third parties that the information will be conveyed by that person *to law enforcement officials,* either voluntarily or in response to compulsory process."

*Indiana Bell,* 409 N.E.2d at 1091 (quoting *Reporter's Comm. for Freedom of Press v. American Tel. & Tel. Co.,* 593 F.2d 1030, 1045 (D.C.Cir. 1978), *cert. denied,* 440 U.S. 949, 99 S.Ct. 1431, 59 L.Ed.2d 639 (1979)) (emphasis supplied to denote relevant omissions in Pohle's quotation from such authority, Appellant's Reply Brief at 4).

We find that there is a clear distinction between the cases discussed above and the instant case. Specifically, the "risk" inherent in each of the above cases is that information supplied to third parties and retained by them as business records will be discoverable by the government in a criminal investigation and not protected by the Fourth Amendment. While one does not have a reasonable expectation of privacy with respect to business records being handed over to the police, it does not follow that one gives up all expectations of privacy and, therefore, waives all claims of public disclosure of private facts when voluntarily revealing one's affairs to a third party, in particular one's spouse. Such a determination should be made on a case-by-case basis, looking to the reasonable expectations of the parties and the circumstances surrounding the disclosure. To the extent that our discussion in *Indiana Nat'l Bank* may be read to align fourth amendment expectation of privacy analysis with the tort of invasion of privacy in general, we disaffirm such a reading.

In the instant case, the undisputed evidence establishes that Cheatham voluntarily submitted to her estranged husband taking sexually explicit pictures of her in

the privacy of his home, without inquiring what he planned to do with the pictures. Approximately a year thereafter, she failed to request the pictures during the couple's dissolution. Further, she failed to take any action following an apparent threat by Pohle to publish the pictures.

██ We cannot agree with Pohle that the trier of fact could reasonably infer from this conduct that Cheatham consented to the publication of the photographs. Rather, it is clear that, in the heat of passion and hopes of reconciliation, she simply consented to being privately photographed by her husband. From such limited consent, it certainly cannot legitimately be inferred that Cheatham intended to waive her right to complain about the public distribution of the photographs. *See Continental Optical*, 119 Ind.App. at 650, 86 N.E.2d at 309. Further, her failure to take action to obtain the photographs during the dissolution [3] or following his apparent threat similarly does not raise an inference that Cheatham intended to consent to their distribution. *See American Nat'l Bank & Trust Co.*, 180 Ind.App. at 554, 391 N.E.2d at 687. Therefore, as a matter of law, we find that Cheatham's actions do not amount to waiver, and the trial court properly entered partial summary judgment on Pohle's defense of waiver.

Judgment affirmed.

SULLIVAN, J., and STATON, J., concur.

---

3. While Pohle does not claim that his ownership of the photographs, pursuant to the dissolution decree, gives him free reign to do what he pleases with them, we feel compelled to observe the following language from *Continental Optical*, 119 Ind.App. at 652, 86 N.E.2d at 310, as waiver presupposes that there is a right to be waived:

> We do not mean to say that the ownership of a negative or print is important when determining the question of whether or not one's right of privacy has been invaded by the unauthorized use of one's pictorial likeness. Even though the subject of a photograph does not own the negative or have any property rights therein, there are circumstances under which the unauthorized publication of prints therefrom would amount to an invasion of the subject's right of privacy....

While we can envision a transfer of title in photographs that would either expressly or impliedly include therein the right to publish, we find that such is not the case here.