Eric C. STOLBERG, Appellant
(Respondent Below),

v.

Diana L. STOLBERG, Appellee
(Petitioner Below).

No. 28A04–8804–CV–139.

Court of Appeals of Indiana,
Fourth District.

May 15, 1989.

Andrew C. Mallor, Mallor Grodner &
Bohrer, Bloomington, for appellant.

Thomas A. Berry, Berry Benson Brown Mills & Shapiro, Bloomington, David A. Reidy, Jr., Bloomington, for appellee.

CONOVER, Presiding Judge.

Respondent-appellant Eric Stolberg (Eric) appeals the trial court's grant of petitioner-appellee Diana Stolberg's (Diana) petition for rehearing and the trial court's subsequent voiding of the dissolution decree as it related to property distribution.

We reverse.

We address only the issue of whether the trial court erred in voiding the dissolution decree as it related to property distribution.

On September 21, 1970, Diana and Eric were married. There was one child born of the marriage. In January, 1986, Diana filed a petition for dissolution of marriage. Final hearing was set for August, 1986. At the final hearing, the trial judge directed the parties to negotiate further and arrive at a settlement regarding distribution of the marital assets and the custody of their child. After more than four hours of negotiation, their attorneys informed the trial judge there was an oral agreement. The trial judge then asked the parties to testify as to what they had agreed upon.

Eric under oath told the court he would receive his IRA, life insurance, vehicle, jewelry, 1985 tax refund, the furnishings in his possession, his interest in a realty company, and a closely held corporation under their agreement. Additionally, he would receive certain partnerships and properties, subject to Diana's receiving one-half the net cash distributions and one-half the net sale price thereof. Also, he had agreed to assume liabilities and notes totaling $92,154 and other marital debts totaling $900. Diana was to receive her IRA, vehicle, jewelry, the marital residence, furnishings, and a one-half interest in the net cash flow of the business projects. She also would receive $1500 per month in maintenance for twelve months, as well as $25,000 in cash.[1] Eric would pay $11,000 toward Diana's attorney and expert witness fees, also.

Diana testified she believed Eric made a full and fair disclosure of all marital assets and asked the trial judge to approve the settlement. At the conclusion of Diana's testimony, the trial judge cautioned her the dissolution order would be final regarding property distribution. He further explained the oral agreement testified to would be put in writing and incorporated into the final decree. He concluded by informing Diana there would be a full and complete hearing on the evidence if she did not agree. She agreed.[2]

The trial judge directed the parties' attorneys to reduce the agreement to writing and present it for the court's acceptance. After a written draft was prepared, it was submitted to the trial judge who incorporated it verbatim into the proposed decree. Diana received an unsigned copy of the written decree, and four days later received a copy of the decree signed by the judge.

Diana received and accepted her share of the property distribution pursuant to the dissolution decree, including the marital

1. The $25,000 lump sum payment was overlooked by Eric in his oral testimony. It was, however, a term of the written agreement and was paid to Diana.

2. The following colloquy took place between the trial judge and Diana:

BY THE COURT:

Q. Mrs. Stolberg do you understand that once an order is entered concerning division of property that is a final order that can not be modified, can not be changed at a later time?

A. Yes sir.

Q. The things involving the child can be as needed, but the property division can not be?

A. Yes sir.

Q. And the agreement that has been testified to here today verbally with the understanding that it will be put in writing as part of the decree is the agreement that you would like for this Court to accept [as] the final division of property in this dissolution is that correct or not?

A. That is correct.

Q. And you understand, Mrs. Stolberg, if it is not correct that we would have a full and complete hearing with the evidence presented and the findings made by myself as Judge of this Court to which you are entitled if you wish to have?

A. Yes sir I do.

Q. All right that you, Mrs. Stolberg you may step down. Any other evidence at this time.

(R. 120–121).

residence, the $25,000 lump sum payment and maintenance. She did not receive any money from the net cash distributions of the partnerships and properties in which she owned a one-half interest only because no cash distributions were made during the months following the decree. She filed no motion to correct errors within 60 days from the entry of the decree about which she later made complaint.

Approximately six months later, Diana requested a rehearing pursuant to Ind. Rules of Procedure, Trial Rule 60(B). Diana claimed the dissolution decree was void because the marital assets were not properly distributed. She also claimed Eric had misrepresented material facts during discovery and negotiations. The trial judge granted Diana's request for a rehearing.

At the rehearing, both parties presented evidence. The trial judge found there was no agreement in writing between the parties and, therefore, no valid agreement had been incorporated into the dissolution decree, and declared the dissolution decree void as it related to property distribution. Eric now appeals.

He contends the trial court improperly granted Diana's Trial Rule 60(B) motion. He contends the trial court abused its discretion when it found there was no written agreement between the parties and set aside the dissolution decree as it related to property division.

In its judgment, the court stated:

... the Court finds and orders that there was no agreement in writing between the parties and, therefore, no valid agreement to incorporate and merge into the final decree. Further, there was no final hearing on the merits as to property disposition other than the parties attempted recitation of a verbal property settlement agreement and the Court did not, as a result, consider the necessary statutory factors prior to entering judgment. Therefore, there being no valid division

of property, the decree, in regard to property division, is void.[3] (R. 10).

Property distribution may occur in one of two ways. First, the parties may enter into a written agreement, the terms of which may be approved by the trial court and incorporated into the dissolution decree. I.C. 31–1–11.5–10. Second, if the parties choose not to enter into a written settlement or the trial judge rejects the parties' agreement, then the trial court must dispose of the property pursuant to I.C. 31–1–11.5–3, which lists several factors to be considered prior to distributing the property. *Waitt v. Waitt* (1977), 172 Ind. App. 357, 360 N.E.2d 268, 272.

Ind. Rules of Procedure, T.R. 60(B)(6) authorizes a trial court to grant relief from a void judgment "upon such terms as are just." On appeal, we will set aside a trial court's ruling in this regard only if it constitutes an abuse of discretion. *DuShane v. DuShane* (1985), Ind.App., 486 N.E.2d 1106. An abuse of discretion will be found only where the court's conclusion and judgment is an erroneous one. *Graham v. Schreifer* (1984), Ind.App., 467 N.E. 2d 800, 802. That is to say, a trial court's order granting a T.R. 60(B) motion must be one clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

Here, contrary to the trial judge's finding, it is apparent the agreement should not have been declared void. Ind. Code 31–1–11.5–10, which governs property distribution agreements, provides:

Sec. 10. Agreements. (a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, *the parties may agree in writing to provisions for the maintenance of either of them, the disposition of any property owned by*

---

**3.** Diana raises fraud as a second basis for declaring the dissolution decree void as it relates to property distribution, as she did in her T.R. 60(B) motion. The trial judge did not render his decision on the basis of fraud, or even comment on the validity of such a claim in his decision. We, therefore, decline Diana's invitation to comment on the presence or absence of fraud. Instead, we review this case based solely on the issues raised by the trial judge's ruling.

*either or both of them and the custody and support of their children.*

(b) In an action for dissolution of the marriage the terms of the agreement if approved by the court shall be incorporated and merged into the decree and the parties ordered to perform them, or the court may make provisions for disposition of property, child support, maintenance, and custody as provided in this chapter.

(c) The disposition of property settled by such an agreement and incorporated and merged into the decree *shall not be subject to subsequent modification by the court* except as the agreement itself may prescribe or the parties may subsequently consent. (Emphasis supplied)

The statute on its face requires (a) an agreement between the parties which is (b) reduced to writing. There is no statutory requirement the written agreement need be signed by the parties. Here, the facts indicate such an agreement was made. The substance of the agreement was testified to by Eric and orally accepted by Diana. The trial court interrogated both parties on the content of the agreement and their understanding thereof. Upon questioning, Diana affirmed her request for approval of the settlement as stated by Eric. Unquestionably, both Eric and Diana intentionally, with full knowledge of the eventual outcome, entered into a joint agreement. The settlement was put in writing by both parties' attorneys to fulfill the statute's obvious purpose to eliminate any confusion as to what the parties had agreed upon, prior to the incorporation thereof into the trial court's decree. The court reviewed and approved the agreement, thereafter incorporating it into the dissolution decree. Diana received a copy of the written agreement both before and after the judge signed it. Diana did not object at any stage of the proceedings. The entry of that judgment became final and binding upon both Diana and Eric.

Diana maintains she and Eric never reached a genuine agreement, or "meeting of the minds." She asserts such an agreement is a requirement; however, she fails to cite any authority in support of this proposition. In any event, the undisputed evidence demonstrates agreement concerning property settlement was reached.

Diana next maintains no written agreement was ever made, as required by statute. Rather, she asserts the agreement signed by the trial judge was merely "written evidence of an oral agreement." We fail to see any real distinction between a written agreement and written evidence of an oral agreement. The distinction is one of semantics rather than substance. It was the written agreement contemplated by the statute.

Diana further contends she should have been presented with the written agreement for her signature. She maintains both she and Eric were required by Indiana law and policy to sign the agreement. She further maintains she rejected the document when she eventually received it believing it did not accurately represent her earlier oral assent. Had the document been presented earlier for her signature, she contends she could have reviewed it and voiced her dissatisfaction.

We first note Diana cited us no appropriate authority for the proposition her signature was required. While it would have been advisable for the parties to sign the agreement, signatures are not specifically required by I.C. 31-1-11.5-10. Diana was present at the final hearing and heard the trial judge's instructions to the attorneys. Additionally, the trial judge explained to her the process of reducing the oral agreement to writing and incorporating the writing into the final decree. No mention was made of a signature requirement. Had Diana desired a signature requirement, she could have mentioned it at such time. We further note Diana fails to indicate how she rejected the written agreement or how the written agreement differed from the oral agreement. She points only to the inclusion of the $25,000 cash payment by Eric in the written agreement, but its exclusion in the oral testimony. Such an oversight in the oral testimony only benefitted Diana. She alleges no other difference.

Diana cites *McClure v. McClure* (1984), Ind.App., 459 N.E.2d 398, for the proposition a signed written agreement must be presented to the court for its approval or, in the alternative, the court must make a just and reasonable disposition of the property after considering the necessary statutory factors. Such an interpretation of *McClure* obscures the true holding of the case. In *McClure,* the husband and wife arrived at an oral agreement, the terms of which were stipulated into the record by counsel. The trial judge then requested the property settlement be reduced to writing and "everybody" sign it. Several days later, before the settlement was put into writing, the wife clearly repudiated the agreement. The trial court, however, approved and incorporated the oral agreement into the dissolution decree. On appeal, we reversed based solely on the wife's repudiation. We specifically declined to comment on what constitutes a written agreement or the validity of a stipulated oral agreement. *Id.* at 400. We also specifically noted the trial judge's comment stating "everybody" could sign the agreement made a signed agreement a condition precedent to his approval of the agreement. *Id.* at 401. No authority was cited for a signature requirement.

Here, there is no evidence Diana ever repudiated the agreement, though she had several opportunities to object to its contents. At the final hearing, Diana requested the trial judge approve the settlement as testified to by Eric. The trial judge gave her the opportunity to object and have the property distributed by the court after a hearing on the evidence. She, in fact, chose to orally approve the agreement. She was given a second opportunity during the two weeks during which the parties' attorneys were preparing the agreement per the trial judge's order. There is no evidence Diana disagreed with or objected to any of the agreement's terms. Diana then had a third opportunity to voice her objections when she received the unsigned copy of the decree. Again, she made no objection, thus indicating her approval. She received a signed copy of the decree four days later. Soon thereafter, Diana's attorney informed her by way of a letter the trial judge "indicated that either party would have the right to seek appropriate action if the Decree does not reflect the agreement entered in the record of the Court." (R. 49). Instead of objecting at that point, Diana once again acquiesced. She did not object in any manner until approximately six months later. Diana had more than a reasonable opportunity to object to the property settlement.

■ Even if the agreement was somehow flawed, Diana may not now complain of such error. A party may not take advantage of an error which he commits, invites, or which is the natural consequence of his own neglect or misconduct. *Herron v. Herron* (1983), Ind.App., 457 N.E.2d 564, 569 (mother precluded from complaining of error in the annual review of a support provision in the dissolution decree because she made no objection to or comment about the provision at the final hearing.) Invited error is not subject to review by this court. *Becker v. MacDonald* (1986), Ind.App., 491 N.E.2d 210, 212. Here, Diana invited any error she now complains of by clearly agreeing, without objection, to the agreement and acquiescing in the procedure used in drawing up the agreement. Diana was given ample opportunity to object to the content and form of the agreement, but she failed to do so. Consequently, she cannot now complain.

■ A second basis for our reversal is the trial judge's declaration the judgment is "void." As a general rule, a judgment is void only when a lack of jurisdiction over the person or subject matter is demonstrated on the face of the record. Harvey & Townsend, *Indiana Practice* 215 (1971). Our review of cases examining void judgments under T.R. 60(B)(6) revealed no basis for voiding a judgment other than a lack of jurisdiction. See generally, *Kratkoczki v. Regan* (1978), 178 Ind.App. 184, 381 N.E.2d 1077, 1080, *trans. denied.* Here, Diana alleges no lack of jurisdiction and the trial judge makes no reference to jurisdiction in his order. Therefore, the trial judge improperly declared the dissolution decree void as it related to property distribution.

In this light, Eric points out Diana never filed a timely motion to correct error pursuant to Ind. Rules of Procedure, Trial Rule 59. He, therefore, contends the trial court erred in ruling upon Diana's Trial Rule 60(B) motion. Diana, in answer, argues the trial judge never issued a final judgment. She contends the trial judge rendered judgment on less than all of the issues (i.e. because the judgment was declared void as it related to property distribution), making a motion to correct error "technically incorrect." Consequently, she argues her motion for rehearing, pursuant to Trial Rule 60(B), was the appropriate vehicle to attack the void judgment present in this case.

As we have already stated, the judgment was not void and was indeed a final appealable order. Based on this argument, Diana should have filed a timely motion to correct error. Additionally, in *Scheetz v. Scheetz* (1987), Ind.App., 509 N.E.2d 840, 845, we held a party is required to file a motion to correct error rather than file a T.R. 60(B) motion provided the matter was known or discoverable within the sixty day period for filing a timely motion to correct error. The party seeking relief has the burden of affirmatively establishing it was not possible to raise the claimed errors by a timely T.R. 59 motion. *Id.* Here, it appears Diana knew or could have discovered any of the matters relating to whether the judgment was void within the sixty day time limitation, thus she failed to meet her burden of establishing a right to relief under T.R. 60(B). Diana also failed to meet her burden regarding her allegation of fraud. The allegations in her T.R. 60 motion were predicated upon matters known or discoverable by Diana within the time limitation. Diana claims:

1) Eric failed to provide Diana with his 1985 tax returns until after the final hearing,

2) Eric misrepresented certain tax credits he was to receive,

3) Eric misrepresented certain "developmental fees" he would receive,

4) Eric misrepresented the interest Diana was to receive in several real estate projects, and

5) Eric dissipated marital property immediately prior to Diana's filing for divorce.

Each basis of relief came to Diana's attention or was discoverable at the time of dissolution or shortly thereafter. Any asserted errors could have been included in her motion to correct error. Diana could not use T.R. 60(B) to revive an expired remedy.

The trial court abused its discretion.

Reversed with instructions to fully reinstate the original final decree.

MILLER, J., concurs.

CHEZEM, J., dissents and files separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent. I would defer to the judgment of the trial court. The judge specifically said that he did not consider the necessary statutory factors prior to entering judgment and it was void. I would affirm.