FIVE STAR CONCRETE, L.L.C.,
Appellant–Defendant,

v.

KLINK, INC., Appellee–Plaintiff.

No. 17A03–9706–CV–217.

Court of Appeals of Indiana.

March 30, 1998.

Rehearing Denied May 28, 1998.

W. Michael Horton, Burt, Blee, Dixon & Sutton, Fort Wayne, for Appellant–Defendant.

Jeffrey G. Raff, Fort Wayne, for Appellee–Plaintiff.

STATON, Judge.

Five Star Concrete, L.L.C. ("Five Star") appeals the entry of summary judgment in favor of Klink, Inc. ("Klink"), a former member of Five Star, and also appeals the denial of its cross-motion for summary judgment. In regard to the granting of Klink's motion, Five Star raises the following consolidated and restated issue:

I.    Whether Klink, as a dissociating member of a limited liability company, has the legal right to receive a distribution equal to the net income allocated to it for taxation purposes.

Concerning the denial of its cross-motion for summary judgment, Five Star presents two restated issues:

II.    Whether Klink affirmatively divested itself of all of its economic interest when it sold its membership units to Five Star.

III.    Whether the method of valuing Klink's economic interest demonstrates that Klink was paid the current fair market value for its entire interest in Five Star.

We affirm in part, reverse in part and remand.

On June 14, 1994, Klink and four other corporations, all engaged in supplying ready-mix concrete, formed Five Star, a limited liability company ("LLC"), in order to furnish concrete to large construction projects. Klink contributed $38,500.00, 12.5% of the initial total capitalization, and was issued 12.5 ownership units.[1]

In a letter dated October 13, 1995, Klink formally notified Five Star of its intent to withdraw from membership effective October 10, 1995.[2] The remaining members decided to purchase Klink's ownership units and to continue the business.[3] To accomplish this end, Five Star members met on October 23, 1995 and agreed that Klink would receive $61,047.22 for the value of its "units." Record at 72.

After Five Star's fiscal year ended December 31, 1995, Klink was allocated $31,889.02 of income, representing its share of the LLC's profits for the approximate ten-month period of 1995 when Klink was a member. The allocation did not result in a monetary distribution to Klink. Instead, the allocation was made only for the purpose of properly determining Klink's tax liability. After receiving notification of the allocation, Klink filed a complaint against Five Star claiming that it was entitled to a distribution of cash in the sum of $31,889.02. Klink moved for summary judgment on its claim, and Five Star responded with its own motion for summary judgment, asserting that Klink had already been paid for its entire interest. Following a hearing, the trial court granted Klink's motion, finding that Klink had a legal right to receive a distribution of $31,889.02. The court also denied Five Star's cross-motion. Five Star appeals both rulings.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

In this case, the trial court entered specific findings of fact with its order. Specific findings aid appellate review, but they are not binding on this court. *Althaus v. Evansville Courier Co.*, 615 N.E.2d 441, 444 (Ind.Ct.App.1993), *reh. denied.* Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh evidence, but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C). The fact that both parties requested summary judgment does not alter our standard of review. *Laudig v. Marion County Bd. of Voters Registration*, 585 N.E.2d 700, 704 (Ind.Ct.App.1992), *trans. denied.* We must separately consider each motion to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.*

---

1. The trial court found that Klink's capital contribution was $100,000.00. Record at 155. However, the parties do not dispute that Klink contributed the lesser amount.

2. Unless a written operating agreement provides that a member may not withdraw by voluntary act, a member may withdraw from a limited liability company "at any time by giving thirty (30) days written notice to the other mem-

bers...." IND.CODE § 23–18–6–6 (1993). Neither party addresses Klink's failure to give adequate notice, and we do not consider it in our analysis.

3. Irving Ready–Mix, Inc. also formally withdrew from Five Star, leaving three members to carry on the company's business.

## I.

### *Distribution of $31,889.02*

Five Star first contends that the trial court improperly entered summary judgment in favor of Klink on the basis that Klink had the legal right to an actual distribution of $31,-889.02, the amount allocated for taxation purposes. At the outset, we recognize that LLCs offer the same limited liability as the corporate form of business organization, but they are treated by federal and state taxing bodies in the same way as partnerships, that is, income "passes through" the entity and is taxed to the member, an owner of an interest in the company. PAUL J. GALANTI, 17 INDIANA PRACTICE, BUSINESS ORGANIZATIONS § 7A.1, at 38–39 (Supp.1997). Limited liability companies are also governed by the Indiana Business Flexibility Act (the "Act"). *See* IND.CODE §§ 23–18–1–1 to 23–18–13–1 (1993). The Act empowers members to make and amend operating agreements for managing the business and regulating the LLC's affairs, as long as these are not inconsistent with state law or the LLC's articles of organization. IND.CODE § 23–18–2–2(2) (1993).

■ Here, there is no dispute that the allocation, Klink's portion of Five Star's income, was proper. Five Star was being taxed as a "pass-through" entity, and the allocation was required by tax law as well as by the Operating Agreement. However, Klink insists that when there is an allocation to a dissociating member there is a corresponding obligation to make a cash distribution of income equal to the allocation. We do not agree.

Nowhere does the Act provide that allocation of income to members for income tax purposes creates an automatic legal right to receive a distribution in the amount of that income, even when a member is withdrawing from the LLC. Indeed, there are times that

such a distribution would be unlawful. *See* IND.CODE § 23–18–5–6;[4] *see also United States v. Basye,* 410 U.S. 441, 453, 93 S.Ct. 1080, 1088, 35 L.Ed.2d 412, 422 (1973) (each partner pays taxes on share of partnership's income without regard to whether that amount is actually distributed to partner).

The Operating Agreement is also silent regarding the timing and amount of distributions; thus, under the Act, these decisions are to be made by the majority of the members. *See* IND.CODE § 23–18–4–3(a) (1993). The evidence construed in favor of Five Star shows that Five Star made a distribution to all members in July of 1995; Klink's share was approximately $12,500.00. However, neither this distribution nor any other was made based upon the amount of income allocated to a member. Further, since that date no distributions were made to any members.

Conduit treatment under income tax law means that allocations occur regardless of the magnitude or timing of distributions. *See* BLACK'S LAW DICTIONARY 75 (6th ed. 1990) (defining "Allocable share of income"). We conclude that the allocation of profits for tax reporting purposes did not provide Klink with a legal right under either the Act or the Operating Agreement to receive a distribution in the same amount. Summary judgment in favor of Klink was improvidently granted.

It does not follow, however, that Klink's interest in Five Star's profits for the ten-month period of 1995 should be ignored. Here, the member's share of Five Star's profits and losses is part of the total economic interest transferred in the buy-sell agreement. However, in this case, we cannot value that interest as a matter of law. This brings us to Five Star's next argument.

## II.

### *Divestment of Economic Interest*

■ The minutes of the October 23, 1995 meeting memorializing the Five Star mem-

---

4. A distribution may not be made if after giving effect to the distribution:
   (1) the limited liability company would not be able to pay its debts as the debts become due in the usual course of business; or (2) the limited liability company's total assets would be less than the sum of its total liabilities plus, unless the operating agreement permits other-

wise, the amount that would be needed if the affairs of the limited liability company were to be wound up at the time of the distribution to satisfy any preferential rights that are superior to the rights of members receiving the distribution.
IC 23–18–5–6 (1993).

bers' buy-sell agreement states that Klink would receive $61,047.22 for the value of its "units." Record at 72. Five Star contends that it is entitled to summary judgment because, when Klink sold its "units" to Five Star for $61,047.22, Klink divested itself of its entire economic interest, including its right to profits. Klink counters that the use of the term "units" proves that it sold less than all its interests for that amount.

Pursuant to the Operating Agreement, "unit" refers to "an interest in the Company representing a contribution to capital." Record at 52. This supports Klink's argument that it sold less than all of its economic rights in Five Star when it accepted the $61,047.22. However, as Five Star points out, under the same Operating Agreement, the members' interests are represented by the units held by each member. Thus, each unit generally entitled the members to one vote and to a proportionate share of the LLC's net income, gains, losses, deductions and credits. Record at 53. "Units," as used in the minutes, could reasonably denote either all or only part of Klink's economic interests in Five Star.

■ The minutes signed by all Five Star members purport to show agreement of the parties; however, mutual assent is necessary to the formation of every contract. *Martin Bros. Box Co. v. Orem,* 117 Ind.App. 110, 112, 69 N.E.2d 605, 605 (1946). The designated evidence supports an inference that the parties entered into the contract with materially different meanings attached to the word "unit." The trial court recognized the factual dispute and properly denied Five Star's motion for summary judgment.

### III.

### *Valuation Method*

In the "Facts" section of its brief, Five Star maintains that the valuation method

chosen by the parties demonstrates that Klink actually received the fair market value of its entire interest. We analyze this as a separate argument.

■ Here, the parties determined fair market value by examining Five Star's September 30, 1995 balance sheet. Liabilities of $104,495.42 were subtracted from assets valued at $592,873.16, leaving $488,377.74. That amount was then multiplied by 12.5%, Klink's percentage of ownership, resulting in the agreed sum of $61,047.22. Five Star claims that, because it used an accrual basis of accounting, its September 30 balance sheets reflected the value of all accounts as of that date. It then maintains that, by using this valuation method, Klink received the amount upon which its complaint is based.

Valuing the interest of a member is a "complex task," more of a business matter than a legal one. *See* GALANTI, 17 INDIANA PRACTICE, BUSINESS ORGANIZATIONS § 6.7, at 339 (1991) (in context of valuing outgoing partnership interest). There is no best method for valuation and much depends on the nature of the business. *Id.* The "book value" formula, used in this case, has the advantage of varying the value of the LLC as the balance sheet of the LLC changes; however, some assets are valued at their depreciated value rather than their actual fair market value. *See id.* at 339–40. We do not agree with Five Star that resolution of this matter is appropriately decided as a matter of law. Five Star is not entitled to summary judgment on this ground.

In conclusion, Five Star has not shown that it was entitled to summary judgment, and we affirm the trial court's denial of its motion. Klink had no legal right to an actual distribution of $31,889.02, allotted for tax purposes; thus, we reverse the entry of summary judgment in Klink's favor and remand for proceedings consistent with this opinion.[5]

---

**5.** Upon remand, the buy-out provision in the Operating Agreement may become relevant. It provides that, if Five Star elects to purchase the interest of a "Former Member" and no predetermined purchase price of a "unit" had been established within a two-year period:

> [t]he fair market value shall be determined by a certified public accountant selected by the selling Member and a certified public accoun-

tant selected by the Company or purchasing Member, although all Members may select the same accountant. If the two accountants cannot agree as to the fair market value, the value shall be determined by a majority vote of said accountants and a third certified public accountant selected by said accountants.

Record at 60.

Affirmed in part, reversed in part and remanded.

GARRARD and RUCKER, JJ., concur.