**AD CRAFT, INC. and Chancellor Media Corporation, Appellants–Defendants,**

v.

**AREA PLAN COMMISSION OF EVANSVILLE AND VANDERBURGH COUNTY, Appellee–Plaintiff.**

Andrew Guagenti; Robert Griffin; Robert G. Woodward; William Shepherd; Janet Shepherd; Expressway Dodge, Inc.; Robert Kent Motor Company, Inc. d/b/a Kenny Kent Toyota–Mitsubishi; Citizens National Bank of Evansville as Trustee of Expressway North Associates Land Trust and Trust No. 116225; Fielding Court Homeowners Association; and Field Court Apartments, Appellees–Defendants.

No. 82A04–9806–CV–289.

Court of Appeals of Indiana.

Aug. 16, 1999.

Rehearing Denied Oct. 13, 1999.

Robert R. Faulkner, Leslie C. Shively, Fine & Hatfield, A Professional Corporation, Evansville, Indiana, Attorneys for Appellants.

D. Timothy Born, Shawn M. Sullivan, Terrell, Baugh, Salmon & Born, L.L.P., Evansville, Indiana, Attorneys for Appellee Area Plan Commission of Evansville and Vanderburgh County.

R. Thomas Bodkin, Douglas A. Welp, Bamberger, Foreman, Oswald and Hahn, L.L.P., Evansville, Indiana, Attorneys for Appellees Andrew Guagenti and Robert Griffin.

Paul J. Wallace, Cedric Hustace, Bowers, Harrison, Kent & Miller, L.L.P., Evansville, Indiana, Attorneys for Appellee Robert Kent Motor Company, Inc. d/b/a Kenny Kent Toyota–Mitsubishi.

Donald R. Wright, Wright, Evans & Daly, Evansville, Indiana, Attorney for Appellee Fielding Court Homeowners' Association.

## OPINION

BROOK, Judge

### Case Summary

Appellants-defendants Ad Craft, Inc. ("Ad Craft")[1] and Chancellor Media Corporation ("Chancellor Media")[2] (collectively "appellants") appeal the following rulings: (1) the trial court's refusal to grant Ad Craft's motion to dismiss; (2) the trial court's refusal to grant Ad Craft's motion for change of venue from Vanderburgh County; and (3) the trial court's failure to find a genuine issue of material fact to preclude its grant of partial summary judgment to appellee-plaintiff Area Plan Commission of Evansville and Vanderburgh County ("APC"). We affirm and remand for further proceedings.

### Issues

Appellants raise three issues for review, which we restate as follows:

(1) whether the trial court erred in refusing to grant Ad Craft's motion for change of venue from Vanderburgh County;

(2) whether the trial court erred in refusing Ad Craft's motion to dismiss; and

(3) whether the trial court erred in failing to find a genuine issue of material fact to preclude its grant of partial summary judgment to APC on the question of the validity of Ad Craft's improvement location permit ("permit") for an off-site outdoor advertising sign.

### Facts and Procedural History

The issues in this case arise from Ad Craft's erection of an off-site outdoor advertising sign on a vacated right-of-way adjacent to Outlot C ("Outlot C") of Metro Centre East Commercial subdivision, Section I ("Metro subdivision"); the street address of Outlot C is 101 Metro Avenue

1. Ad Craft is also referred to in various court documents as "Ad–Craft"; however, because appellant refers to itself as "Ad Craft" in its appellate brief, we shall adhere to this spelling preference throughout our opinion.

2. On September 18, 1998, appellant-defendant Universal Outdoor, Inc. ("Universal Outdoor") filed a petition to substitute parties in this appeal, stating that "all interest in the outdoor advertising structure at issue here has been transferred to Whiteco Advertising, Inc." ("Whiteco"); this Court granted Universal Outdoor's petition on October 2, 1998. On April 19, 1999, Ad Craft and Whiteco filed a petition to substitute Chancellor Media for Whiteco as a party in this appeal because Chancellor Media had "acquired the outdoor advertising structure which is the subject of this appeal from Whiteco"; this Court granted the petition on May 3, 1999. Because Universal Outdoor was the real party in interest when the instant controversy developed, however, we shall refer to Chancellor Media as "Universal Outdoor" when appropriate for the sake of clarity.

in the city of Evansville in Vanderburgh County, Indiana.

The essential facts relevant to our review indicate that the plat of the Metro subdivision was recorded on December 23, 1991. Signing restrictions were listed on the plat, mandating that signage on Outlot C "shall be limited to 25 feet above grade." [3] Beginning on July 23, 1992, Ad Craft applied to APC for permits to erect a sign on Outlot C, which is owned by defendant-appellee Andrew Guagenti ("Guagenti"). Pursuant to EVANSVILLE, IND., MUN.CODE § 15.153.10.156(B)(2), a permit application must include the following:

(a) A site plan for the principal and accessory structures and uses, existing and proposed, showing size, location on lot, and lot size.

(b) Except for one and two-family dwellings and accessory buildings, the site plan must also show the following:

(1) The exact property lines of property, including existing street and right-of-way lines. . . .

Under EVANSVILLE, IND., MUN.CODE § 15.153.10.156(C)(2), "[a]n improvement location permit is void if construction has not started or the use has not been established within six months of the date of issuance." Consequently, Ad Craft's permits # 921245 (dated July 24, 1992) and # 931578 (dated September 20, 1993) became null and void because of Ad Craft's failure to erect a sign on the property within six months of the date of issuance of the permits.

On March 1, 1995, the Evansville city engineer approved Ad Craft's application for an encroachment permit (# 7362) on Outlot C for the purpose of constructing a billboard. The next day, Ad Craft received permit # 950255 to erect a sign on Outlot C. On August 28, 1995, Ad Craft applied to renew permit # 950255 because the sign had not yet been constructed. On September 1, 1995, Ad Craft was issued permit # 951518 to erect a sign on Outlot C.[4]

On October 18, 1995, Guagenti filed a petition "for the vacation of a portion of Local Service Road No. 7 adjacent to the north boundary line of Lot 1 Metro Centre East, Section 1 located between Stockfletch Ditch on the east and Metro Avenue on the west"; the right-of-way in question is located directly south of Outlot C. Guagenti's petition was granted by a city ordinance on or about November 29, 1995. Ad Craft later erected a sign more than 25 feet in height in the vacated right-of-way adjacent to Outlot C.

On February 29, 1996, attorney Steven L. Bohleber ("Bohleber"), representing appellee-defendant Expressway Dodge, Inc. ("Expressway Dodge"), wrote a letter to APC's attorney to express his concern that "a large billboard [was] about to be erected immediately east of [his] client's property" in the recently vacated right-of-way adjacent to Outlot C. Bohleber also made the following observations, which happen to be an excellent summary of the zoning issues in controversy:

I readily concede that the owners of Outlot C acquired fee simple ownership in the vacated portion [i.e., the adjacent right-of-way]. The implications of the vacation on subdivision restrictions, existing permits and land use regulations are not as clear. Either the zoning per-

---

3. On page 5 of its brief, APC asserts that Premier Group, Ltd., the party that subdivided the Metro subdivision, "consented to a covenant to restrict signage" that is reflected by the restrictions listed on the recorded plat.

4. Among the conditions listed on permit # 950255 are that the height to the top of the sign be limited to 25 feet "per subdivision plat"; that the sign "must be out of all ease-

ments"; that the sign must be 300 feet "from any other off-premise sign"; and that the permit was issued "in accordance with attached plan and drawings." It is interesting to note that on permit # 951518, the conditions state that the height of the sign "may exceed bldg. height by 30 [feet]"; however, the last line of the conditions section reads, "Same conditions as permit # 950255."

mits and restrictions follow the vacation or they do not. In either case, I do not believe the developers and owners of the vacated portion can erect a billboard as they are apparently intending. If the restrictions followed the vacation, they are limited to 25 feet. If the restrictions and zoning do not follow the vacation, the vacated portion is not zoned correctly to allow a billboard and has no valid permit. . . . Therefore, any way you look at the effect of this vacation, it prohibits the erection of this billboard.

On September 7, 1995, on March 2, 1996, and again on March 12, 1996, appellee-defendant Robert G. Woodward ("Woodward") filed a permit application on behalf of both Universal Outdoor and himself as the owner of applicable sign rights to erect a commercial billboard at 5700 Division Street in Evansville. The proposed billboard would be located within 300 feet of Ad Craft's existing billboard in violation of EVANSVILLE, IND., MUN.CODE § 15.153.07.125(D); therefore, APC was compelled to deny Woodward's permit requests. In a letter to APC dated March 4, 1996, Woodward asserted that Ad Craft's permit had expired because no sign had been erected on Outlot C, and that "[a] sign was illegally built on a section of R–1 zoned land adjoining lot 1 without a permit." [5]

On April 1, 1996, APC filed a complaint for declaratory judgment "pursuant to the Uniform Declaratory Judgments Act," [6] seeking resolution of the following issues under IND.CODE § 36–7–4–1014:

30. A controversy has arisen as to whether Ad–Craft [sic] may construct an off-premises sign on Outlot C or in the vacated right-of-way which exceeds twenty-five feet (25').

31. A controversy has likewise arisen as to whether the off-premise sign constructed by Ad–Craft [sic] has been constructed in the location described in Improvement Location Permit No. 951518; it is the position of some of the defendants that said off-premises sign was not constructed in said location which renders said Improvement Location Permit void.

32. A controversy has likewise arisen as to what the zoning classification of the vacated right-of-way is and whether the zoning restrictions on the vacated right-of-way permit an off-premises sign.

33. A controversy has likewise arisen as to whether the APC may issue an improvement location permit to Universal [Outdoor] for the erection of an off-premise sign at 5700 Division Street, Evansville, Indiana; to the extent that Ad Craft has a valid and enforceable permit for the erection of an off-premise advertising display on Outlot C, [EVANSVILLE, IND., MUN.CODE § 15.153.07.125] appears to preclude the APC from issuing an improvement location permit to Universal [Outdoor] for the erection of an off-premise sign at 5700 Division Street, Evansville, Indiana.

APC requested that the trial court enter a declaratory judgment to determine the issues raised by the above controversies.[7]

---

5. Lot 1 abuts Outlot C on the east and the vacated right-of-way on the north; on the original recorded plat, the vacated right-of-way is located outside the boundaries of the Metro subdivision.

6. See IND.CODE § 34–14–1–1 to –16 (formerly IND.CODE § 34–4–10). IND.CODE § 34–14–1–2 provides, "Any person . . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or

franchise and obtain a declaration of rights, status, or other legal relations thereunder."

7. The appellants-defendants named by APC in its original and amended complaints are persons or entities that have property interests in or near either Outlot C or 5700 Division Street. As mentioned above, Guagenti owns Outlot C and the adjacent vacated right-of-way; Robert Griffin is Guagenti's business partner and the co-owner of Outlot C; William Shepherd and Janet Shepherd own the property at 5700 Division Street, whereas Woodward owns the sign rights thereto; Ex-

On April 17, 1996, Ad Craft filed a verified motion for change of venue from Vanderburgh County, in which it stated that Ind. Trial Rule 76(A) provides for a change of motion "when the county where the suit is pending is a party to the suit." [8] Ad Craft initially did not serve a copy of the motion upon any party other than APC, which struck Gibson County from the list of three counties submitted by the trial court on April 22, 1996. On that date, Ad Craft struck Posey County from the list, and the trial court ordered the cause venued to Warrick County. On April 24, 1996, APC filed a motion to reconsider granting change of venue from Vanderburgh County, citing IND.CODE § 36–7–4–1014(a) and (f):

(a) The plan commission or any enforcement official designated in the zoning ordinance may bring an action in the circuit or superior court of the county to invoke any legal, equitable, or special remedy for the enforcement of this chapter or any ordinance adopted or action taken under this chapter . . . .

(f) If the plan commission or designated enforcement official is successful in the action, the respondent shall bear the costs of the action. A change of venue from the county may not be granted in such an action.

FCHA filed a motion to reconsider the trial court's grant of change of venue on May 1, 1996, stating that it had not received Ad Craft's motion for the change until after it had received the trial court's ruling thereon. On May 6, the trial court denied Ad Craft's motion for change of venue and rescinded its earlier order granting that change. Ad Craft filed a motion to certify the trial court's ruling for interlocutory appeal pursuant to Ind. Appellate Rule 4(B)(6) on May 10, 1996, which was denied by the trial court on June 28, 1996.

On June 21, 1996, Ad Craft filed a motion to dismiss, claiming that APC had not exhausted its administrative remedies as required by the local zoning ordinances and therefore had no standing to bring its action; that because APC had alleged no violation of any statute or ordinance, it had failed to state a claim upon which relief could be granted; that the signage restrictions for the Metro subdivision were "private covenants, enforceable only by the other property owners in said subdivision"; that APC was not a real party in interest to an essentially private dispute and therefore had no standing; and that the trial court was without jurisdiction to "perform any act herein" except to grant Ad Craft's motion for change of venue. The trial court granted Ad Craft's motion to dismiss on September 17, 1996, and granted APC 30 days to file an amended complaint.

APC filed an amended complaint for declaratory judgment on October 17, 1996.[9] On October 31, 1996, Ad Craft filed a motion to dismiss the amended complaint, which was denied by the trial court on

pressway Dodge owns real estate immediately adjacent to the Metro subdivision; Robert Kent Motor Company, Inc. d/b/a Kenny Kent Toyota–Mitsubishi ("Kenny Kent") operates an automobile dealership near Outlot C; Citizens National Bank of Evansville as trustee of Expressway North Associates Land Trust and Trust No. 116225 owns real estate "on or near" Kenny Kent's dealership; Fielding Court Homeowners' Association ("FCHA") is an association of residents of a subdivision located near Outlot C; and Fielding Court Apartments is an "unincorporated association in close proximity to Outlot C." APC, Guagenti and Griffin, Kenny Kent, and Field Court Homeowners' Association filed briefs as appellees in the instant case; on February 3, 1999, this Court approved Woodward's notice of adopting APC's brief.

8. T.R. 76(A) provides in relevant part, "The motion [for change of venue] shall be granted only upon a showing that the county where suit is pending is a party. . . . "

9. APC's amended complaint does not differ substantively from its original complaint; in its motion for leave to file an amended complaint, APC noted that it was amending its original complaint only to "reflect the true name of the fee simple owner" of the real estate on which Kenny Kent operated its automobile dealership.

December 4, 1996. Ad Craft filed its answer and affirmative defenses on December 23, 1996. On April 16, 1997, Ad Craft filed a motion to be dismissed from the cause, claiming that the contested sign was now owned by Universal Outdoor and that Ad Craft was therefore no longer "a necessary or proper party to this litigation." The trial court denied Ad Craft's motion to dismiss on June 26, 1997.

On December 8, 1997, Ad Craft and Universal Outdoor jointly filed a response to a motion by Kenny Kent for summary judgment and a motion for partial summary judgment, in which it claimed that because the contested sign was erected in the vacated right-of-way, it was not constructed within the boundaries of the Metro subdivision and was therefore not subject to the height restrictions on the recorded plat.

On January 20, 1998, APC filed a combined motion for partial summary judgment and a response to Ad Craft and Universal Outdoor's motion for partial summary judgment, in which it argued alternatively that if Ad Craft had erected the sign on Outlot C, then the sign was in violation of the subdivision height restriction; if the sign was not located on Outlot C, then Ad Craft had erected the sign without a valid permit, which had been issued more than six months earlier for a sign to be constructed *only* on Outlot C. If the latter alternative were found to be true, APC advised the trial court that further adjudication would be necessary to determine whether APC was obligated either to grant Universal Outdoor's permit to erect a sign at 5700 Division Street or to "re-issue" a new permit to Ad Craft.

On February 23, 1998, Ad Craft and Universal Outdoor jointly filed a motion for leave to assert counterclaim and the proposed counterclaim. Ad Craft and Universal Outdoor filed a response to APC's motion for partial summary judgment on

March 2, 1998, in which they argued that a genuine issue of material fact existed as to whether APC was estopped to challenge the legality of Ad Craft's permit; APC was alleged to have known "exactly where this sign was intended to be located and where it ultimately was constructed." They also argued that APC had no standing to enforce the "private covenants and restrictions" of the Metro subdivision.

On March 5, 1998, APC filed an objection to Ad Craft and Universal Outdoor's motion for leave to assert counterclaim. APC filed a reply brief in support of its motion for partial summary judgment on March 11, 1998, in which it argued that Ad Craft and Universal Outdoor's claim of equitable estoppel was in fact a claim of laches, which APC claimed may never be asserted against a municipality enforcing its ordinances. APC also argued that the subdivision sign restriction was not a private covenant or restriction, but "a condition imposed upon all property in the subject subdivision at the time the subdivision plat was recorded by the APC."

At a hearing on April 2, 1998, the trial court found the contested sign to have been "built improperly on [a] vacant portion of Outlot C, which was not owned by Guagenti at the time of application or at the time it was approved." The trial court also ruled invalid Ad Craft's permit # 951518 and stayed all orders in effect until the defendants had "exhausted all appeals," [10] which Ad Craft and Universal Outdoor initiated by filing a praecipe on May 4, 1998. On May 12, 1998, the trial court entered its order granting partial summary judgment, which reads in relevant part as follows:

> At a hearing on April 2, 1998, the Court granted [APC's] partial motion for summary judgment [*sic*]. It is not proper for Ad–Craft [*sic*] to argue that the vacated property adjoining Outlot C is

10. The record does not contain a written court order dated April 2, 1998; we have excerpted these rulings from the docket sheet.

Outlot C for the purposes of its permit, but not subject to the restrictions placed on the subdivision. To hold otherwise would be manifestly unfair to adjacent property owners. This is particularly true where, as here, the property where the sign was actually placed was not even part of Outlot C when the permit was granted. Accordingly, the Court found that permit number 951518 is null and void because, among other things, the sign was erected in the vacated right-of-way and not on Outlot C within six months of the issuance of the permit.[11]

### Discussion and Decision

Before we address the merits of this case, we must express our vexation at the unwarranted complexity of the record presented for our review. In their amended praecipe, appellants requested the clerk of the Vanderburgh Superior Court to "prepare and certify a complete transcript of *any and all* pleadings and documents or related exhibits filed in this cause[,] to be used on appeal to the Indiana Court of Appeals." (Emphasis supplied.) Two volumes totaling 368 pages were compiled pursuant to this request; however, both APC and Kenny Kent found it necessary to request additional "pleadings and papers filed in this cause," and two supplemental volumes of the record were prepared. Ind. Appellate Rule 7.2(B) permits an appellant to "designate only those parts of the record to be transmitted to the court on appeal"; we cannot understand why appellants' request for "any and all pleadings and documents" was not followed to the letter.

### I. Change of Venue from Vanderburgh County

Because APC is a party to the instant case and is an administrative body that operates jointly as a branch of both city and county government, appellants argue that Ad Craft was entitled to a change of venue under T.R. 76(A); appellants also assert that to the extent IND.CODE § 36–7–4–1014 conflicts with T.R. 76, the trial rule must prevail. Because APC struck Gibson County from the list of counties submitted by the trial court, appellants argue that APC waived any objection to the grant of Ad Craft's motion for change of venue. APC insists that IND.CODE § 36–7–4–1014(f) specifically prohibits a change of venue, and that the statute generally allows it to bring a zoning enforcement action in Vanderburgh County. Appellants characterize APC's complaint for declaratory judgment as a request for an advisory opinion and argue that APC failed "to follow certain administrative procedures" required by the municipal code before initiating legal action. APC counters that the municipal code does not preclude it from pursuing legal remedies to "resolve a controversy regarding the enforcement of a local zoning ordinance."

■ Appellants' "exhaustion of remedies" argument cannot withstand serious scrutiny. EVANSVILLE, IND., MUN.CODE § 15.153.10.155(A) provides that APC "shall enforce this chapter by doing the following: ... (2) Order discontinuance of violations after a written notice of the nature of the violation has been sent to the person responsible for the violation." Nowhere in the regulation is APC prohibited from pursuing its available legal remedies under IND.CODE § 36–7–4–1014, which specifically allows municipal planning commissions to seek court enforcement of zoning ordinances. *See Benjamin v. City of West Lafayette*, 701 N.E.2d 1268, 1271–1272 (Ind.Ct.App.1998), *trans. denied* (1999) (statute specifically allowed city to seek court enforcement of occupancy ordinance); IND.CODE § 36–7–4–1014(a) (plan

---

11. In their brief, appellees note that the trial court's order does not include a ruling on the question of APC's obligation to issue a permit to Universal Outdoor to erect a sign at 5700 Division Street. For this reason, we must remand this cause to the trial court for further proceedings.

commission *"may bring an action in the circuit or superior court of the county to invoke any legal, equitable, or special remedy for the enforcement of this chapter* or any ordinance adopted or action taken under this chapter") (emphasis supplied); IND.CODE § 36–7–4–1014(b) ("plan commission or any enforcement official designated in the zoning ordinance *may also bring an action in the circuit or superior court of the county to enforce:* (1) conditions imposed under this chapter; (2) *covenants made in connection with a subdivision plat* : . . .") (emphasis supplied).

▮▮▮ With respect to any conflict between T.R. 76 and IND.CODE § 36–7–4–1014(f) regarding Ad Craft's *procedural* right to seek a change of venue, we note "the general rule that in civil actions once a proper and timely motion for change of venue is filed, the trial court is divested of jurisdiction except to grant the change of venue." *Bird v. Delaware Muncie Metropolitan Plan Commission,* 416 N.E.2d 482, 486 (Ind.Ct.App.1981). However, "[t]he *substantive* right to a change of venue can be granted only by the Legislature." *State ex rel. Hatcher v. Lake Superior Court, Room Three,* 500 N.E.2d 737, 739 (Ind.1986) (emphasis supplied); *see State ex rel. Wade v. Cass Circuit Court,* 447 N.E.2d 1082, 1083 (Ind.1983); *State ex rel. Blood v. Gibson Circuit Court,* 239 Ind. 394, 400, 157 N.E.2d 475, 478 (1959) (*"method* and *time* of asserting" right to change of judge "are matters of procedure and fall within the category of procedural rules") (emphasis in original); *K.B. v. S.B.,* 415 N.E.2d 749, 756 (Ind.Ct.App.1981) ("the right to a change of venue from the county or judge is a substantive right which can be conferred only by the legislature."). In the case of IND.CODE § 36–7–4–1014(f), the General Assembly specifically determined that a defendant does not have the substantive right to request a change of venue in a zoning enforcement action; consequently, we may not entertain appellants' arguments regarding the procedural considerations of T.R. 76. *See State ex rel.*

*Hatcher,* 500 N.E.2d at 739 (relevant statute "specifically takes away the right [to a change of venue] in suits arising under that statute. It follows then from this line of reasoning, that [T.R. 76] does not apply.").

We need not address appellants' waiver arguments in great detail. APC asserts that it was the only party that had been served with Ad Craft's motion for change of venue at the time the trial court granted the motion, and that FCHA filed a timely motion for the trial court to reconsider its order granting the change of venue. *See State ex rel. Lake County Council v. Lake County Court,* 266 Ind. 25, 27, 359 N.E.2d 918, 919 (1977) ("timely motion for change of venue from the judge effectuates an immediate divestiture of jurisdiction to act in the case on any matter other than the motion for change of venue"); *State ex rel. Keesling v. Grant Circuit Court,* 238 Ind. 577, 580, 153 N.E.2d 912, 913 (1958) ("Jurisdiction over the case for the protection of the right of the parties pending the transfer of a cause after a change of venue has been granted must, from force of necessity, be in some court. To hold otherwise would leave the parties helpless."); *Piskorowski v. Shell Oil Co.,* 403 N.E.2d 838, 842 (Ind.Ct.App.1980) ("The court in which a change of venue motion is filed, however, retains jurisdiction to make any necessary emergency interlocutory orders until that time when the case pleadings and transcript are physically transferred to the court to which venue is changed."); *see also Metropolitan Development Commission of Marion County v. Newlon,* 156 Ind.App. 464, 466, 297 N.E.2d 483, 484 (1973) ("A court has inherent power to control its own orders. It is therefore perfectly proper for a trial court to reconsider a previous order, and to vacate it, or make a modified or contrary order while the case is still *in fieri."*). Therefore, the trial court did not err in refusing to grant Ad Craft's motion for change of venue from Vanderburgh County.

## II. Ad Craft's Motion to Dismiss

■ Appellants again raise the issue of APC's failure to exhaust its administrative remedies, which we have addressed above. Appellants also argue that APC improperly relied on the enforcement provisions of IND.CODE § 36–7–4–1014 to obtain a judgment in the absence of any allegation of a zoning ordinance violation, and that APC "has no standing to enforce the [private] covenants and restrictions" of the Metro subdivision.

We first observe that APC specifically brought the instant action "pursuant to the Uniform Declaratory Judgments Act." IND. CODE § 34–14–1–1 provides,

> Courts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding is open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect. The declaration has the force and effect of a final judgment or decree.

As noted above, IND.CODE § 34–14–1–2 states in relevant part that a person [12] "whose rights, status, or other legal relations are affected by a . . . municipal ordinance . . . may have determined any question or construction or validity arising under the . . . ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder."

A primary requirement of the Uniform Declaratory Judgment Act "is that the plaintiffs demonstrate that they have standing for the relief requested." *Town of Munster v. Hluska*, 646 N.E.2d 1009, 1012 (Ind.Ct.App.1995).

> In order to obtain declaratory relief, the person bringing the action must have a substantial present interest in the relief sought, not merely a theoretical question or controversy but a real or actual controversy, or at least the "ripening seeds of such a controversy," and that a question has arisen affecting such right which ought to be decided in order to safeguard such right.

*Id.*, quoting *Morris v. City of Evansville*, 180 Ind.App. 620, 622, 390 N.E.2d 184, 186 (1979). In the instant case, APC requested that the trial court enter a declaratory judgment to determine its authority "to issue an improvement location permit to Universal [Outdoor] for the erection of an off-premise sign a 5700 Division Street." It is obvious that the "seeds of controversy" were rapidly ripening with respect to the height of Ad Craft's sign, the zoning status of the vacated right-of-way, and the validity of Ad Craft's permit; APC certainly had a substantial interest in enforcing the relevant zoning regulations and in determining whether it should revoke Ad Craft's permit and grant a permit to Universal Outdoor.

In its complaint, APC stated that it "is an administrative body with responsibility for enforcing the Zoning Code of Evansville and Vanderburgh County pursuant to [IND.CODE § 36–7–4–1014]." Appellants accuse APC of seeking an advisory opinion because it failed to allege a zoning violation in its complaint; however, the uncertainty of the zoning status of the vacated right-of-way is precisely the reason that APC initiated its action under the Declaratory Judgment Act. In *Volkswagenwerk, A.G. v. Watson*, 181 Ind.App. 155, 390 N.E.2d 1082 (1979), this Court enunciated the following justifications for and practical considerations of the Act:

> The purpose of a declaratory judgment action and a declaratory judgment statute is to quiet and stabilize legal relations and thereby provide a remedy in a

12. IND.CODE § 34–14–1–13 states that "person" as used in this chapter "shall be construed to mean any person, partnership, limited liability company, joint stock company, unincorporated association, or society, or municipal or other corporation of any character whatsoever."

case or controversy where there is still an opportunity for peaceable judicial settlement. [Citation omitted.] The [Act] ... is remedial in nature, affording relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered. [Citation omitted.] ... Such statute was intended to furnish a full and adequate remedy where none existed before and it should not be resorted to where there is no necessity for such a judgment. [Citation omitted.] ...

In determining the propriety of declaratory relief, the test to be applied is whether the issuance of a declaratory judgment will effectively solve the problem, whether it will serve a useful purpose, and whether or not another remedy is more effective or efficient. [Citation omitted.] ... The determinative factor is whether the declaratory action will result in a just and more expeditious and economical determination of the entire controversy. [Citation omitted.]

*Id.*, 181 Ind.App. at 159–160, 390 N.E.2d at 1084–1085. Considering the intricacies of the various zoning and permit issues involved and the legal and economic necessity of a prompt resolution thereof, APC's decision to bring an action under the Act was perfectly appropriate in the instant case.

■ With respect to appellants' argument that APC has no standing to enforce the "private covenants and restrictions" of the Metro subdivision, we merely observe that IND.CODE § 36–7–4–1014(b)(2) specifically enables a planning commission to bring an action in superior court to enforce "covenants made in connection with a subdivision plat." We do not see how the legislature could have expressed its intent more clearly in this regard, and we need not belabor this point any further.

In conclusion, the trial court did not err in denying Ad Craft's motion to dismiss.

### III. APC's Motion for Partial Summary Judgment

■ "The purpose of summary judgment is to terminate litigation for which there can be no factual dispute and which can be determined as a matter of law." *City of New Haven v. Chemical Waste Management of Indiana, L.L.C.,* 701 N.E.2d 912, 921 (Ind.Ct.App.1998), *trans. denied* (1999). In reviewing a grant of summary judgment, this Court stands in the shoes of the trial court. *Five Star Concrete, L.L.C. v. Klink, Inc.,* 693 N.E.2d 583, 585 (Ind.Ct.App.1998). "Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.;* Ind. Trial Rule 56(C). The moving party must prove that "there are no genuine issues of material fact and he is entitled to judgment as a matter of law." *Id.* "Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings." *Id.* The specific findings issued by the trial court in the case at bar aid appellate review, but they are not binding on this Court. *Id.* "We do not weigh evidence, but will consider the facts in the light most favorable to the nonmoving party." *Id.* Finally, "[w]e may sustain a summary judgment upon any theory supported by the designated materials." *Id.;* T.R. 56(C).

■ Appellants' primary exception to the trial court's grant of summary judgment focuses on what they consider to be a question of estoppel, i.e., that APC "knew exactly where this sign was intended to be located and where it ultimately was constructed" and therefore "acquiesced in its erection." APC responds that appellants' estoppel argument should more properly be labeled an assertion of laches, which is "never applicable to a municipality in enforcing its ordinances because of public policy interests." *Hannon v. Metropoli-*

*tan Development Com'n of Marion County,* 685 N.E.2d 1075, 1080 (Ind.Ct.App. 1997). Before we may address the parties' estoppel arguments, however, we must determine whether APC met its burden to demonstrate that no genuine issue of material fact existed with respect to the validity of Ad Craft's permit.

Because of the uncertainty surrounding the zoning issues in this case, APC was placed in the unusual position of having to argue in the alternative in its motion for summary judgment. APC asserted that Ad Craft erected the sign in the "vacated right-of-way adjacent to Outlot C," which neither Ad Craft nor the trial court disputed. The question then remained whether the right-of-way became part of Outlot C upon its vacation and was therefore subject to the Metro subdivision sign height restrictions, or whether the right-of-way remained a separate property outside the Metro subdivision, in which case Ad Craft's permit to erect a sign on Outlot C would be invalid.

To support its assertion that Ad Craft did not erect the sign on Outlot C, APC designated Ad Craft's application for renewal of permit # 950255, which sought permission for the erection of an "off-premise advertising display" at "101 Metro Outlot C Avenue."[13] APC also designated Guagenti's response to a request for admission, which established that "an off-premises sign structure having a height in excess of 25 feet from the surface of the ground was, in fact, erected by Ad Craft on that portion of the vacated Right of Way adjacent to Outlot C." Ad Craft did not dispute this evidence in its response to APC's motion for partial summary judgment.

In its order granting APC's motion for partial summary judgment, the trial court made the following conclusions:

It is not proper for Ad–Craft [*sic*] to argue that the vacated property adjoining Outlot C is Outlot C for the purpose of its permit, but not subject to the restrictions placed on this subdivision. To hold otherwise would be manifestly unfair to adjacent property owners. This is particularly true where, as here, the property where the sign was actually placed was not even part of Outlot C when the permit was granted. Accordingly, the Court found that permit number 951518 is null and void because, among other things, the sign was erected in the vacated right-of-way and not on Outlot C within six months of the issuance of the permit.

The trial court obviously determined that APC had carried its burden to demonstrate that there were no genuine issues of material fact with respect the validity of Ad Craft's permit. We agree.

Returning to the question of estoppel, the evidence on which appellants rely to assert a genuine issue of material fact is

**13.** Appellants' argument that a genuine issue of material fact exists with respect to the "parties['] understanding as to what real estate that convoluted description entailed and whether the vacated right of way became part of the same street address" is devoid of merit. As APC points out, not only did Ad Craft fail to designate this question as a genuine issue of material fact under Ind. Trial Rule 56(H) and thereby waive this argument on appeal, but Ad Craft applied for renewal of permit # 950255 before Guagenti petitioned for the vacation of the adjacent right-of-way. As required by EVANSVILLE, IND., MUN.CODE § 15.153.10.156(B)(2)(a), Ad Craft attached to its permit application a copy of the Metro subdivision plat and a drawing of the proposed sign. The southwest corner of Outlot C is circled on the copy of the plat, and the designated location of the sign is well within the boundaries of Outlot C. Also, the drawing of the sign shows its height as 25 feet: the maximum allowed by the Metro subdivision restrictions. Finally, in response to the request for information on the application that reads, "LIST SIZE AND TYPE OF PROPOSED SIGN(S)," Ad Craft made the notation "9.314 [square feet] (.21 ACRES)," which corresponds exactly to the specified dimensions of Outlot C on the subdivision plat. Given this evidence, which was designated by APC in its motion for partial summary judgment, we find appellants' arguments regarding a genuine issue of material fact to be disingenuous.

Ad Craft's permit application dated August 28, 1995, for renewal of permit # 950255. The application contains the following cryptic notation by an unknown author: [14] "Application for removal of permit # 950255 ongoing R/W negotiations (vacation) has not been completed, therefore sign has not been [remainder of sentence illegible]." Ad Craft argues that this sentence fragment "creates an issue as to whether APC was put on notice that the sign was to be erected in the vacated right of way and whether APC should be estopped from challenging its validity."

We agree with APC that the equitable doctrine of laches applies in the instant case. In *Harbour Town Associates, Ltd. v. City of Noblesville*, 540 N.E.2d 1283 (Ind.Ct.App.1989), this Court examined the concept of laches within the context of zoning regulations:

The Indiana Supreme Court defined laches in *Perry v. State* [, 512 N.E.2d 841, 842 (Ind.1987) ], as:

[t]he neglect for an unreasonable or unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. It is an implied waiver arising from knowledge of existing conditions and an acquiescence in them, the neglect to assert a right, as taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to the adverse party and thus operating as a bar in a court of equity.

The City argues that laches never applies to a municipality in the enforcement of its zoning regulations. We agree.

Most jurisdictions hold that laches is never applicable to a municipality in enforcing its ordinances. [Footnote omitted.] In *Jackson v. Kenai Peninsula Borough* [, 733 P.2d 1038 (Alaska 1987) ],

the supreme court of Alaska recognized that the reasons behind exempting municipalities from being equitably estopped when seeking to enforce zoning ordinances were equally applicable to laches:

(1) the defendant seeking to invoke estoppel is under at least constructive notice of the zoning ordinance he seeks to avoid; (2) the purpose of zoning is to protect the public interest and zoning regulations are drawn by representation of the public will pursuant to the political process; (3) a particular officer or individual city representative lacks authority to waive the public's right to enforce its ordinance.

*Id.* at 1041.

Furthermore, because under laches the only fault of a local government is its inaction, additional policy considerations operate to deny its effect. A city's inactivity is not necessarily wrong; it may be the result of a reasonable decision to use limited enforcement resources for other matters. Indeed, a zoning board cannot police every possible violation. The remedy of non-enforcement of a law is a drastic one for such "fault." Furthermore, the only "reliance" which a landowner can show under a laches theory is that he or she relied upon non-enforcement of a law.

*Id.* at 1043 (citations omitted).

Similarly, in *Shaker Boulevard Co. v. City of Cleveland*[, 31 Ohio App.2d 199, 287 N.E.2d 814 (1972) ], the court held that equitable principles do not outweigh the public policy interests inherent in the enforcement powers of a zoning board:

It may be argued that "equity" requires a balancing of hardship after the fact of long violation. If there is

___

**14.** We note that what appears to be the signature of Ad Craft representative Pat Tuley is located above the notation in question, but neither APC nor Ad Craft has offered any

evidence regarding either who made the notation or when it was written on the permit application.

equity in prolonged violation, it has only a specious quality. The wrongdoer brought his condition on himself. And such balancing as the equity argument requires would surely encourage violations by holding out the prospect of an equitable cure for deliberate but long undiscovered transgressions. No zoning policy would survive the impact of so pernicious a doctrine once it was approved by the courts.

[31 Ohio App.2d at 209,] 287 N.E.2d at 821–22. We agree with the reasoning of these courts that public policy interests prohibit a private party from asserting laches against a municipality in the enforcement of its zoning ordinances.

*Harbour Town Associates,* 540 N.E.2d at 1286–1287.

 It is patently obvious that Ad Craft applied for a permit to erect a sign on Outlot C and then attempted to circumvent the zoning regulations by actually erecting the sign on the vacated right-of-way; in simultaneously arguing that the right-of-way *is* part of Outlot C for purposes of its permit validity but *is not* part of Outlot C for purposes of zoning height restrictions, Ad Craft has endeavored to reap the benefits of both bargains. "A party may not take advantage of an error which he commits, invites, or which is the natural consequence of his own neglect or misconduct." *Stolberg v. Stolberg,* 538 N.E.2d 1, 5 (Ind.Ct.App.1989). "Invited error is not subject to review by this court." *Id.*

The trial court did not err in granting APC's motion for partial summary judgment.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. Because the trial court's final order did not specifically address the issue of whether APC is now obligated to issue a permit to Universal Outdoor to erect a sign at 5700 Division Street, we remand this cause to the trial court for further proceedings consistent with this opinion.

BAKER and RUCKER, JJ., concur.